## RATIO P. PARISH v. THE STATE.

### No. 5154.  Decided March 12, 1919.

#### 1.—Murder—Sufficiency of the Evidence.

Where, upon trial of murder, and a conviction of that offense upon circumstantial evidence, the same was sufficient to sustain the verdict of the jury there was no reversible error.

#### 2.—Same—Circumstantial Evidence—Hypothesis of Guilt—Rule Stated.

In order to convict on circumstantial evidence it is not essential that the circumstances proved should to a moral certainty actually exclude every hypothesis that the act may have been committed by another person, known or unknown; but the hypothesis intended is a reasonable one consistent with the circumstances and facts proved, and the supposition that the act may have been committed by another person must be in harmony with the evidence. Following Wallace v. State, 46 Texas Crim. Rep., 341, and other cases, distinguishing Pogue v. State, 12 Texas Crim. App., 283.

#### 3.—Same—Circumstantial Evidence—Rule Stated.

When cases depend upon circumstantial evidence alone it is essential to prove each necessary fact beyond a reasonable doubt before it can become the basis of any inference adverse to the accused; it is not, however, required that each fact thus proved be, standing alone, of such weight as to establish guilt. Following Marshal v. State, 5 Texas Crim. App., 273, and other cases.

#### 4.—Same—Case Stated—Sufficiency of the Evidence.

While probably no one of the facts proved in the instant case would alone support the verdict, yet they being consistent with each other, with the main fact in issue, with the guilt of the accused, and inconsistent with his innocene, the verdict is upheld by their cumulative and combined strength, each forming a thread in the cord of circumstances which drew and bound the minds of the jury to the conclusion which produced a reasonable and moral certainty that the defendant took part in the homicide. Following Hocker v. State, 34 Texas Crim. Rep., 359.

Appeal from the District Court of Bexar.  Tried below before the Hon. W. S. Anderson, judge.

Appeal from a conviction of murder; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*Smith & Abernathy, Carlos Bee,* and *Brooks, Hart & Woodward,* for appellant.—On question of circumstantial evidence; Barnes v. State, 41 Texas 342; Curry v. State, 7 Texas Crim. Rep., 267; Washington v. State, 16 Texas Crim. Rep., 376; Lowe v. State, 77 S. W. Rep., 220; Warren v. State, 52 Texas Crim. Rep., 218, 106 S. W. Rep., 132; Hernandez v. State, 77 S. W. Rep., 840; Pogue v. State, 12 Texas Crim. App., 283.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—The conviction is for murder and punishment fixed at confinement in the penitentiary for twenty years. The evidence is circumstantial.

The deceased Eliseo Ornelas, appears to have been a Mexican, owner of a Ford automobile which he operated for hire; that during the night of October 9th., appellant in company with one Foreman, both of them being soldiers in the United States army, made a contract with the deceased to take them in his car to a point in the vicinity of San Antonio; that the two soldiers entered the car with the driver. One of them sitting on the front and the other on the back seat. The cousin of the deceased suggested or wanted to go along but the appellant and his companion objected on the ground that they were to bring others back in the car and there would not be room. Deceased appears to have been a boy about eighteen years of age. He was found the following morning about seven o'clock by some persons passing along the road. He had wounds upon his head, his skull was crushed and he was in an unconscious and dying condition. He was in the road and near his body were automobile tracks corresponding in size and description to those which were on the deceased's car. There was in the road near these tracks and not far from the body, some blood in several places and evidence of a fight or struggle having taken place. The deceased had a small amount of money, between seven and eight dollars at the time he made the contract and this had been taken from him and his pockets turned inside out, though his watch and chain had not been removed. Near the body there was found some tobacco and cigaretts and a button from a soldier's coat. The car was found on the morning of the 10th. of October at a point some distance from the scene of the homicide. It was located near some buildings that were being newly constructed in Camp Travis. There were stains of blood at various places upon the car, engine, foot-board and running-board. In the car was found a cap which was identified as belonging to deceased and which had a dent in it, indicating that it had been struck by some object. While the persons in charge of the work and the sheriff were examining the car some one of them handed the sheriff a coat. This was a military coat and there was evidence introduced identifying the coat as belonging to the appellant. There was evidence also that the coat was of a different character from that used by the other soldiers at Camp Travis, it being similar to those formerly used by soldiers, and it was claimed by the witnessess that it had been brought from another camp at which the appellant and his companion were formerly stationed. One of the buttons had been torn from the coat and the button picked near the body of deceased was of the same character as those remaining on the coat, though there is nothing to show that buttons on that coat were peculiar or different

from those on the clothing worn by the numerous soldiers stationed at Camp Travis. There was a small quantity of blood on the coat. The person who handed the coat to the sheriff was not introduced as a witness and it is only from circumstances that the inference is to be drawn that the coat was picked up by one of the several people who were attracted to the scene of the car after it was found, and while it was undergoing examination by the sheriff.

A very short time after the homicide appellant and Foreman were thansferred, with the company to which they belonged from Camp Travis at San Antonio to Camp Bowie in Ft. Worth, and were there arrested by the sheriff, being identified by the brother of deceased who was present at the time that the contract between the deceased and the appellant and his companion was entered into.

No questions other than the sufficiency of the evidence are presented. We are unable to reach the conclusion that there was insufficient evidence to support the verdict.

The judgment is affirmed.

*Affirmed.*

## ON REHEARING.

### March 12, 1919.

.MORROW, JUDGE.—The only question raised in the motion for rehearing is whether, tested by the rules of circumstantial evidence, the facts support the verdict.

That the deceased came to his death by violence inflicted by some human agency other than his own was established beyond doubt. The back of his head bore evidence of blows with some blunt instrument fracturing the skull in several places and driving the bone into the brain. The only question that can arise is whether the evidence, under the rules of law, show that the appellant was the guilty agent. The deceased was found in an unconscious and injured condition on the morning of the 10th. of October. The exact locality is not disclosed by the record further than it appears that he was in and at one side of a road designated the Cassin road, which was a dirt road about three quarters of a mile in length with cactus and brush growing on each side with no houses near it, though there was a field in which there was some cactus. He was near the intersection of this road with what is described as the Quintana road, which is from the City of San Antonio to Von Ormy, and the Quintana road was connected with what is described as the Somerset road by the Cassin road mentioned. As we understand the record, the Somerset road and Quintana road were macadamized and frequented much more than the Cassin road. From a reading of the statement of facts we understand that the

place where the deceased was found was several miles from the City of San Antonio, though neither the direction nor the distance is proved with any degree of accuracy. In the road near where he was found there were tracks made by an automobile with tires like those used on a Ford car, the front tires being smooth and the back tires non-skid tires. About thirty yards distant from the deceased the tracks indicated that the car had moved a short distance, been turned around and driven back to the Quintana road. What the witness described as a soldier's button was about two feet from the auto tracks and about one foot from the body of deceased. The pockets of the deceased were turned inside out, and there was no money found on his person, though his watch with a fob containing the initial R was found, also some cigarettes and tobacco in the pocket of his coat or jumper and one cigarette was on the ground some dozen feet from the body. There were pools of blood in the road and the appearance of a scuffle or scraping the ground something like the side of a shoe. One witness described the tracks indicating a scufffle as about twenty feet from the body and stated there were several puddles of blood, one about four feet from the body. Another witness, estimated the scuffle as ten or twelve feet from the body. It was shown that the Ford automobile was found on the morning of October 10th, at a place, as we understand the record, in Camp Travis where they were building gunsheds and stables. The car had been driven between two of the stables and stopped. There were bloody stains all over the car, the engine, foot-board and running board. A cap was lying in the car on the floor between the seat and the dash-board. There was blood on the floor and the cap was stained with blood. It was a stiff cap and had a dent in the back of it about two and one quarter inches in length. This cap was produced on the trial and identified as belonging to the deceased. The automobile thus found was also indentified as belonging to him and the tires showed to be smooth on the front and non-skid on the back ones. After the car was found by workmen the sheriff and military police were called, reaching the car sometime after noon, about 1:30 or 2:00 o'clock, and while they were examining the car one of the workmen, a carpenter by the name of Smith, who worked in front of where the automobile was found, about fifty yards away, and whose hours of work were from seven in the morning until six in the evening, handed a coat to the sheriff or military police captain. Smith was not used as a witness, nor does the record show where he got the coat. The coat was a part of a United States soldier's uniform and was of an old issue worn by the soldiers when they were on the Mexican border, and not generally worn by soldiers stationed at the time of the homicide at Camp Travis, though some of the soldiers there who had been stationed on the border possessed coats of the same kind.

"Inside of the lining of the coat or blouse was smeared with a thin layer of blood over a wide space." One of the buttons from the coat mentioned was missing and the buttons remaining thereon were like the button which was picked up near the body of the deceased on the road mentioned. The coat was identified as having been purchased by appellant from another soldier a few days before the homicide. It was shown by the testimony of a young man who was a relative of the deceased that on the night of the 9th of October, about one thirty o'clock in the morning, the appellant and another soldier, both of them wearing uniform, approached the deceased in the City of San Antonio, the deceased being the owner of a Ford automobile which he operated for hire, and made an agreement with him to take them in his car to Kelly Field. Appellant and his companion held a whispered conversation during the negotiations which was not heard by the witness. The witness asked permission to accompany them which was denied upon the ground that they expected to bring three other soldiers back with them. The appellant and his companion then got into the car, the deceased driving, the appellant sitting upon the back seat and his companion on the front seat with the driver. They left, going in the direction of Camp Kelly. Deceased was a boy about eighteen or nineteen years of age. Appellant and his companion also wore soldiers' hats. The deceased had some money, $7.75, the witness declared. The cap worn by deceased and found in the automobile, the court mentioned belonging to appellant, and a hat which this witness described as one of the hats worn by the men, were introduced as evidence.

The verdict implies that the jury believed beyond a reasonable doubt that the circumstances disclosed by the evidence, whether controverted or uncontroverted, existed. That the deceased was killed by violence not self-inflicted and that he was robbed, is the only inference reasonably deducible from the circumstances surrounding the homicide. We assume that the jury found that he was robbed. that he was wounded while in his car; that a button from a military coat was found near his body; that appellant was a soldier domiciled at Camp Travis; that the deceased's automobile was found at Camp Travis; that its tires were smooth in front and non-skid in rear; that the appellant's coat was found in the same vicinity in which the automobile was found; that there was a button missing from the coat and blood smeared upon the inside of it; that the button found near the body of deceased was like the button that came off of appellant's coat; that about 1:30 at night, before the body of deceased was found, the appellant and a companion, both soldiers, wearing uniform, contracted with the deceased to take them in his automobile to Camp Kelly; that they got into the car with deceased and started in that direction; that pending negotiations over the contract they held a whispered conver-

sation; that they objected to the relative of the deceased accompanying them, stating that they expected to bring other soldiers back with them; that the deceased was not seen again until he was found in a dying condition near the road.

Appellant insists that these established circumstances were fatally faulty in connecting him with the homicide; suggesting that the absence of proof that the body was found in the direction of Camp Kelly or Camp Travis; and its direction from San Antonio was undisclosed, affords an hypothesis favorable to the appellant. He would be entitled to the benefit of any favorable inference reasonably to be drawn from these omissions in the proof, but there are none pointed out and we discern none.

Doubtless the case having been tried in Bexar County the counsel assumed the familiarity of the jury with well-known localties, and it appears moreover that a plat or diagram was before the jury which is not brought up by the record. The circumstances were such as would have justified the inference by the jury that the deceased received a mortal would while driving his car, and in the absence of some suggestion from the evidence that at the time he received it he was in company with others than the appellant and his companion with whom the evidence placed him, the location of the car at the time he received the wound would not, so far as we are able to understand, be a matter of consequence whether it was on the road to Camp Kelly in which direction, according to the evidence, they started, or whether it occurred at the point near which the body was found.

The omission to show how, or at what point, the carpenter who handed the coat to the sheriff, received it is made the basis of attack upon the sufficiency of the evidence. If it be presumed that the coat was found on the wayside and was not hidden it would not destroy the circumstances established by the evidence that it was appellant's coat; that it had blood on it and that a button was missing from it, unless we go farther and presume that the carpenter's testimony, if presented, would have explained these circumstances in a manner consistent with the innocence, or inconsistent with the guilt of appellant. The evidence discloses that the carpenter worked near where the car was found; that he began work about seven o'clock in the morning; that he handed the coat to the sheriff while he and others were examining the bloody car, sometime after noon on the day it was found, and there is no circumstance or fact in evidence which would justify the presumption that the carpenter's knowledge of the coat would extend further than his having found it in the vicinity of the car in the condition in which he delivered it to the sheriff. The location of the blood was not a controlling fact. It may have gotten on the coat by its falling on the car or from contact with the car or the deceased while on appellant. The failure to introduce testimony

going to show that appellant was not at his place with the company on the morning when the body was found, could do no more in appellant's favor than to compel the presumption that he was with his company at the time mentioned. This presumption would not have been inconsistent with his guilt for the reason that he was shown by the undisputed evidence to have been absent from Camp Travis at the time that he undertook the journey with the deceased at 1:30 on the night of the 9th. of October. The deceased's car, bearing evidence of the tragedy, had been driven to Camp Travis and deposited between two of the stables at a place where, during the daytime, it would have been seen by numbers of people who were working upon the buildings, and it is quite consistent with the State's theory that the appellant returned to his barracks before the dawn of the day upon which the body of the deceased was found. There was no direct evidence that the appellant and his companion were acquainted with the operation of a Ford automobile. There was evidence, however, going to show that the appellant and his companion conspired against the deceased and that their conspiracy contemplated that to make their escape the use of his automobile would be necessary, from which the inference would be a natural one that they were prepared to operate it.

In their able and ingenious argument counsel who presented the case on motion for rehearing, advance the theory that an hypothesis favorable to appellant arises from the fact he or his companion stated in answer to the request of the relative of the deceased that he might accompany them to Kelly Field in the car, that he could not be permitted to do so for the reason that they expected on returning from Kelly Field to bring three soldiers with them. In order to convict on circumstantial evidence it is not essential that the circumstances proved should to a moral certainty actually exclude every hypothesis that the act may have been committed by another person, known or unknown; but the hypothesis intended is a reasonable one consistent with the circumstances and facts proved, and the supposition that the act may have been committed by another person must be in harmony with in evidence. Shultz v. State, 13 Texas Reports, 401; Hamlin v. State, 39 Texas Crim, Rep., 579; Porch v. State, 50 Texas Crim. Rep., 335; Taylor v. State, 81 Texas Crim. Rep., 359, 195 S. W. Rep., 1147; Wallace v. State, 46 Texas Crim. Rep., 341; Michie's Crim. Digest, vol. 2, p. 721. In Pogue's case, 12 Texas Crim. App., 283, to which we are referred, there were weaknesses disclosed by the record not apparent in this one. There there was an hypothesis of suicide of self-defense; an absence of evidence that the appellant was present save that he had been seen with the deceased some hours before the dead body was found. There was no motive disclosed, no blood stains found. When cases depend up-

6—85 T. C. R.

on circumstantial evidence alone it is essential to prove each necessary fact beyond a reasonable doubt before it can become the basis of any inference adverse to the accused. It is not, however, required, that each fact proved be, standing alone, of such weight as to establish guilt. Marshall v. State, 5 Texas Crim. App., 273; Crass v. State, 30 Texas Crim. Rep., 480; Vernon's Crim. Stats, vol. 2, p. 595. That a button from a soldier's coat was found near the body of the deceased while it tends to show that a soldier was present at the homicide, it, standing alone, is by no means conclusive. To strengthen it there was available to the jury the fact that there were automobile tracks made by the car with tires similar to that of deceased's; that there were foot-prints on the ground showing the presence of others; that the spot was an unfrequented one, rendering the presence of others who would have accounted for the presence of the button, improbable; the fact that appellant when he entered the car with the deceased was wearing a military uniform and that his coat, after the body was found, was minus a button, and those remaining were like that found near the body; the fact that the coat had blood upon it; the fact that the car turned around and was driven from the scene of the tragedy on the Quintana road towards San Antonio, at or near which was located Camp Travis, the domicile of appellant and his companion, at which place the car was found, abandoned, containing the battered and bloody cap of the deceased, the car itself smeared with blood; the fact that after midnight, a few hours before the deceased was found in an injured and unconscious condition, the appellant and his companion on their own seeking had taken passage with deceased in his car, taking care that they should be alone, with him by objecting, after a whispered conversation, to the cousin of the deceased accompanying them. While probably no one of these facts would support the verdict, they being consistent with each other, with the main fact in issue, with the guilt of the accused, and inconsistent with his innocence, the verdict is upheld by their cumulative and combined strength, each forming a thread in the cord of circumstances which drew and bound the minds of the jury to the conclusion which produced a reasonable and moral certainty that the appellant took part in the homicide. Hocker v. St., 34 Texas Crim. Rep., 359; Wells on Circumstantial Evidence, p. 279. This conclusion having received the sanction of the trial judge, we are convinced that in view of the evidence it is neither our right nor our duty to overthrow it.

The motion for rehearing is overruled.

*Overruled.*