WILBER FINCH v. THE STATE.

No. 5951.  Decided January 26, 1921.

Rehearing denied May 25, 1921.

**1.—Murder—Circumstantial Evidence—Rule Stated.**

It is not essential that any one of the circumstances proved to exist shall be sufficient to sustain the conviction; it is the combined and cumu-

lative force of all incriminating circumstances established beyond a reasonable doubt, upon which the verdict rests; following Parish v. State, 85 Texas Crim. Rep., 75, and other cases; and where in the instant case the evidence sustained the conviction under a proper charge, there was no reversible error.

2.—Same—Indictment—Change of Venue—Term of Court.

Where, upon trial of murder, the venue was changed to another county, and in the new forum a motion to quash the indictment was made on the ground that there was a misnomer of the term of court at which it was returned, the same was properly overruled, as the statement of the term of court is not a statutory requisite, and the motion to quash was not filed before the venue was changed. Following Scitern v. State, 87 Texas Crim. Rep., 112.

3.—Same—Rehearing—Practice on Appeal.

Where, upon motion for rehearing, this court again carefully considered the record on appeal, and after a most careful re-examination and analysis of all the testimony finds no reason to change the former opinion, there was no reversible error.

Appeal from the District Court of Houston. Tried below before the Honorable John S. Prince.

Appeal from a conviction of murder; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*Marsene Johnson, M. E. Gates, Earle Adams, Elmo Johnson, Roy Johnson,* and *Marsene Johnson, Jr.,* for appellant.—On question of indictment: Lott v. State, 18 Texas Crim. App., 629; Reynolds v. State, 35 Texas Crim. Rep., 437.

*Alvin M. Owsley,* Assistant Attorney General, and *A. T. McKinney, Jr.,* County Attorney of Walker County, and *Dean & Humphrey,* for the State.—On question of indictment: Hightower v. State, 165 S. W. Rep., 184; Goode v. State, 57 Texas Crim. Rep., 220, and cases cited in opinion.

MORROW, PRESIDING JUDGE.—Conviction is for murder and punishment assessed at confinement in the penitentiary for a period of ten years.

The deceased, Walter Coward, while plowing in his field, was shot and killed. Ten buckshot struck him about the face and neck. The shot was fired from a thicket and about twenty steps from where the deceased stood at the time he was killed. The appellant and the deceased were brothers-in-law with families residing in the same community, each near a small stream called Boswell Creek. The thicket from which the shot was fired was on the bank of this creek. The homicide took place late in the afternoon and the officers arrived about sundown, bringing dogs with them. An unsuccessful effort was made to have the dogs track the assailant. A rain had fallen a few days be-

fore the homicide and the water in the creek had risen from four to six inches. An examination of the surroundings was made on Saturday following the homicide, which took place on Friday evening, and ad additional examination was made on Sunday and Monday. The ground in the thicket gave evidence of some-one having stood at the point from which the shot was fired. There were also found in the creek foot-prints of a man who had walked over the ground, and some of these foot-prints were in the water and some of them were on the sand near the water, all of them apparently having been originally under the water, the creek having fallen since they were made. These tracks were of the same size and bore the same appearance and were made by a person who had traveled in each direction. They were followed several hundred yards in the direction of appellant's home and lost sight of after the maker of the tracks had left the creek and went on the high ground, this point being some distance from the home of the appellant. From the point where the tracks left the creek, the nearest route to the home of appellant would have been through an old field; the tracks, however, apparently went around the field, though, as stated above, they were followed but a short distance on the high ground. At the place in the thicket where the leaves were tramped down and from where the shot was fired, there were found wads from a twelve-gauge shotgun shell. Measurements of the tracks were made and testified to in detail. Appellant was arrested about noon on Sunday following the homicide. At his home were found two twelve-gauge shotguns, also some shells of that size loaded with buckshot and some loaded with squirrel-shot. One of the guns had been recently fired and contained a twelve-gauge shell from which buckshot had been discharged. After the arrest, the sheriff got the shoes that the appellant was wearing at the time of his arrest. The shoes had mud on them and had the appearance of having been in the water and had sand in the eyelets and on the heels and soles of the shoes. These shoes were compared with the measurements previously taken of the tracks and coincided with the measurements which had been made with a stick. The shoes were also set in the tracks where they were found sufficiently plain, and some of the tracks were perfectly fitted with the shoes. This was particularly true of the tracks made just as the person making them was leaving the creek at the point nearest appellant's home. Some peculiarities of the shoes were described. They had been worn for some time and had assumed the outline of the foot of the wearer; that is, they were stretched and had taken the shape of the foot and the arch in the sole was flattened by wear.

The funeral took place on the day after the homicide. Appellant did not attend it but with a companion went to town, driving a wagon and leading a horse. He returned in the evening with his companion and the two went to the house of a neighbor who had also been suspected of the homicide, and there conferred for some time, later returning to the home of appellant. While the appellant and his companion were

at the home of the neighbor, the parties who were the State's witnesses lingered near the place and heard the conversation between the appellant and his companion, Holliday, as they passed along the road unaware of the presence of the witnesses. In this conversation appellant, according to one of the witnesses, said "One hit him in the chin, two in the neck, and one in the breast. I claim I made some shot." upon which the parties laughed. Another, describing the same transaction, said that the parties were in conversation as they approached and that the first he understood them to say was: "One hit him in the chin, two in the neck and the rest in his 'damn' breast. I claim I made some shot."

The deceased, about three years before the homicide, had gone to the appellant's home and inquired for him, and finding him absent left word with his wife that the appellant in accusing the deceased of stealing hogs had told a "damn lie." From that time on the parties were not on friendly terms and did not speak when they met. It was also shown that in the fall preceding the homicide, which took place in November, appellant, in discussing the trouble, said that if some talk that was going on did not stop, he or Coward one would come up missing; that business would have already picked up if it had not been for the fact that they were both in the same family.

The appellant proved an alibi by members of his household and by his own testimony, and explained that his presence on the Saturday night at the home of Helton, his neighbor, had no relation to the killing, and that the conversation which he had with his companion, Holliday, on his way home from Helton's residence was not that described by the State's witnesses, but that while he and Holliday were discussing the description that they had received of the killing, he had remarked that Helton said that he had been told that the person who shot Coward very near missed him and that Holiday remarked: "I would not call that very near missing a man," and that appellant commented: "I would call that a good shot." Appellant claimed that his shoes had gotten wet and muddy while he was hunting.

The evidence being wholly circumstantial, the appellant challenges its sufficiency. In passing upon this assignment, the verdict of the jury implies a decision in favor of the State on all controverted points developed by the evidence. Applying this rule, we must assume that the jury has found that the appellant was an enemy of the deceased and had threatened to take his life; that he possessed a weapon such as was used in inflicting death and that this weapon had been recently used; that the discharge from it was of the same character as that which destroyed the deceased; that the assailant had secreted himself in the thicket near the field of deceased; that the assailant approached the ambush from the direction and neighborhood of appellant's home and returned in the same manner, walking in the water and leaving footprints which corresponded in size, shape and peculiarities with those which would have been made by the appellant; and that these foot-

prints were made in the water, a device known to the appellant likely to render pursuit by the bloodhounds impracticable.

It is not essential that any one of the circumstances, proved to exist, shall be sufficient to sustain the conviction. It is the combined and cumulative force of all incriminating circumstances established, beyond a reasonable doubt, upon which the verdict rests. Hocker v. State, 34 Texas Crim. Rep., 359; Parish v. State, 85 Texas Crim. Rep., 82; Taylor v. State, 87 Texas Crim. Rep., 330, 221 S. W., 614. Added to the matters mentioned, the jury must have found that the appellant, after conferring with his neighbor to a late hour in the night and while in company with his intimate and friend, discussing the wounds inflicted upon the deceased, declared, in substance, that in making them his aim was accurate.

The decision of the jury, responding to a charge fairly and accurately stating the law and cautioning them against conviction upon circumstantial evidence, in the absence of that moral certainty which is required, and having the sanction of the trial judge, is, we think, binding upon this court under the evidence disclosed by the record. The credibility of the witnesses supporting the conflicting theories was a matter within the exclusive province of the jury. The conclusion that the appellant was the guilty agent, we think, is not unsupported by the evidence. The evidence that the deceased and the appellant had for three years been enemies was not, we think, improperly received. Previous quarrels and ill-feelings are generally regarded by courts and text-writers as relevant on the issue of motive. Wharton's Criminal Evidence, Vol. II., Sec. 883., In the instant case, the mutual hostility of the parties was not shown to have abated, but is emphasized by threats made some months preceding the homicide. The weight of this evidence was for the jury. Its nearness and remoteness from the date of the homicide did not affect its relevancy. Wharton's Criminal Evidence, Vol. II. Sec. 911.

The indictment recited that it was found by the grand-jury organized at the October term. The indictment was returned on November 21st. On the application of the appellant, the venue was changed on the 24th of November. Subsequently, in the new forum, a motion to quash the indictment was made on the ground that there was a misnomer of the term of court at which it was returned. The statement of the term of court at which the indictment was presented is not one of the statutory requisites. (See Code of Criminal Procedure, Art. 451). At most, it is a matter of form, available only on motion to quash presented in due time. Osborne v. State, 24 Texas Crim. App., 398; Murphy v. State, 36 Texas Crim. Rep., 24; Branch's Crim. Law, Sec. 883, 888-905; Vernon's Texas Crim. Statutes, Vol. II., page 193; Code of Criminal Procedure, Articles 576 and 597.

Under Article 630, Code of Criminal Procedure, it is contemplated that an exception to the form of the indictment to be considered should be made in the court in which the indictment is filed before the venue

is changed.   Caldwell v. State, 41 Texas Reports, 86; Loggins v. State, 8 Texas Crim. App., 434; Ex parte Cox v. State, 12 Texas Crim. App., 665; Vance v. State, 34 Texas Crim. Rep., 395; Goode v. State, 57 Texas Crim. Rep., 220; Vasquez v. State, 76 Texas Crim. Rep., 37, 172 S. W., 225; Fitzgerald v. State, 87 Texas Crim. Rep., 34, 219 S. W. 199; Scitern v. State, 87 Texas Crim. Rep., 112, 219 S. W., 833.

From what has been said, it follows that, in our opinion, no error was committed in overruling the motion to quash the indictment.

We discern nothing in the record before us which would authorize a reversal of the judgment, and it is therefore affirmed.

*Affirmed.*

ON REHEARING.

May 25, 1921.

HAWKINS, JUDGE.—Appellant has filed a motion for rehearing insisting that we were in error in holding the evidence sufficient to support the conviction.

The writer was not a member of this court when the case was originally submitted, and the opinion delivered, and in order to pass intelligently on appellant's motion it has been necessary to review the entire statement of facts, which has been done patiently and carefully.

The charge was for a killing alleged to have occurred in Walker County.   Venue was changed to Houston County.   Before a jury uninfluenced by any prejudice or feeling which might have existed in the county where the killing happened a conviction resulted.

All incriminative testimony offered by the State was sought to be explained by the evidence introduced in appellant's behalf.   The jury declined to accept this explanatory evidence.   After a most careful reexamination and analysis of all the testimony, we find no reason to change our former opinion.

The motion for rehearing is overruled.

*Overruled.*