Joseph FRISON and Charles Watts,
Appellants,

v.

The STATE of Texas, Appellee.

Nos. 44154, 44155.

Court of Criminal Appeals of Texas.

Nov. 2, 1971.

Rehearing Denied Dec. 21, 1971 in No. 44155.

Tom Moore, Jr., Waco, for Joseph Frison.

Rollin Khoury, Waco (Court-appointed), for Charles Watts.

Martin D. Eichelberger, Dist. Atty., Frank M. Fitzpatrick, Jr., Kenneth H. Crow and James E. Barlow, Asst. Dist. Attys., Waco, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

These appeals arise out of convictions in a joint trial for robbery by firearms. The punishment assessed each appellant was 22 years.

The record reflects that on November 27, 1969, around 9:35 p. m. Jerry Harris, assistant manager of a Seven-Eleven Drive In store, was robbed at gunpoint by three men and approximately $150.00 was taken from him. Harris, who was alone at the time, made a positive in-court identifica-

tion of the appellant Frison as one of his assailants but was unable to make a positive identification of the appellant Watts.

Both appellants complain that the court erred in permitting State's witness Officer Dell Butler to testify that the complaining witness Harris had identified them in the Bell County Courthouse.

It appears from the argument advanced that appellants rely upon the rule stated in Lyons v. State, Tex.Cr.App., 388 S.W.2d 950, that while a witness who has identified his assailant at the trial may testify that he also identified him while he was in police custody, others may not bolster his unimpeached testimony by corroborating the fact that he did identify him. See also Vines v. State, Tex.Cr.App., 397 S.W.2d 868 (1966); Brown v. State, Tex.Cr.App., 403 S.W.2d 411 (1966); Acker v. State, Tex.Cr.App., 421 S.W.2d 398 (1967); Cf. King v. State, Tex.Cr.App., 402 S.W.2d 746 (1966); Ward v. State, Tex.Cr.App., 427 S.W.2d 876, 883; Beasley v. State, Tex.Cr.App., 428 S.W.2d 317, 319; Casias v. State, Tex.Cr.App., 452 S.W.2d 483, 489 (1970); Montemayor v. State, Tex.Cr.App., 456 S.W.2d 126 (1970); Grant v. State, Tex.Cr.App., 462 S.W.2d 954 (1971).

In the instant case Harris was the State's first witness. He was not questioned about any pretrial identification of either appellant between the time of the alleged robbery and the trial.

Butler, a Waco city detective, testified he had conducted the investigation of the offense charged. He related that on December 10, 1969, he, Harris and Ranger Gunn had gone to the Bell County Courthouse and that he had seen the appellants in the basement of that building and after a conversation with them had arrested them for the instant offense.

Upon objection to the nature of the conversation the jury was removed. In their absence it was developed that by virtue of a chance encounter Harris had pointed out Frison as one of his assailants

and that both appellants, serving misdemeanor sentences at the time, told Butler they had been in Waco on the night of November 27, 1969.

Upon the jury's return the State, upon re-direct examination, elicited from Butler that Harris had pointed out the appellant Frison as one of the robbers when the encounter occurred in the courthouse basement. The objection to this testimony was that it was "repetitious," "rank hearsay," "completely reversible error." The objection was overruled.

Thereafter counsel for appellant Watts elicited from Butler that Harris had failed to make a positive identification of Watts at the courthouse.

Then after establishing that the police offense report reflected Harris had related the man with the gun had worn a goatee, that Frison had never been seen by his friends wearing a goatee, that military regulations where he was stationed prohibited goatees, that he did not have a goatee at the time of his arrests, etc., counsel for appellant Frison "recalled" Harris. This was after the State had rested and a number of defense witnesses had testified. Counsel had Harris acknowledge that he had indeed reported to the police that one of his assailants had a goatee "probably" "the one with the pistol." Then he was asked:

"Q. Now, you recall your prior testimony about being in the basement of the courthouse in Belton with Detective Dell Butler?

"A. Yes, sir.

"Q. And at some point there you saw Charles Watts and Joe Frison there in the basement?

"A. That's right."

It appears that counsel and the witness were mistaken. We find no place in the record before this court where the witness personally had so testified. Thus, counsel interjected the same evidence be-

fore the jury he complained about being elicited by the State from another witness.

 We conclude in light of Lyons v. State, Tex.Cr.App., 388 S.W.2d 950, the court erred in permitting Butler to testify that Harris had made a pretrial identification at a time when Harris remained unimpeached as to his identification of the appellant Frison as one of the robbers, despite some question of the sufficiency of the objections to call the matter to the trial court's attention. Cf. Montemayor v. State, Tex.Cr.App., 456 S.W.2d 126 (1970). We further conclude, however, that, having impeached or attempted to impeach Harris as to his identification of Frison, the complained of testimony, if not admissible when offered, would have become admissible subsequently rendering any earlier error harmless and the rule in Lyons v. State, supra, inapplicable. Beasley v. State, Tex.Cr.App., 428 S.W.2d 317, 319. We perceive no reversible error as to the appellant Frison. And, it having been elicited from Butler by the appellant Watts that Harris was unable to positively identify him (Watts) at Belton, we likewise find no reversible error as to Watts.

Appellant's reliance upon Priest v. State, 162 Tex.Cr.R. 66, 282 S.W.2d 390, is clearly misplaced, and not controlling under the circumstances here presented.

 Since the appellant Frison "recalled" Harris and first elicited from him that he had seen Frison at Belton, there is no error in Frison's additional complaint that the court erred in permitting the State to make further inquiry after the subject matter had initially been raised (through this witness) by the defense interrogation.

Next appellants complain of the prosecutor's questioning of State's witness Rufus Daniels about identifying the appellants in a lineup.

 Daniels, who was a visitor in a Waco service station on the night of November 27, 1969, the same date of the instant offense, testified that about 11 p. m. appellant Watts had entered such station while he was present and held up the attendant while an unidentified man remained outside. On re-direct examination he testified that two or three weeks later he went to the police station and "they * * showed six or seven lined up." After an objection was sustained he was asked if he had identified the two appellants, "especially Mr. Charles Watts." The objection then proffered was sustained, the question was not answered, although the motion for mistrial based upon the fact that a jury instruction to disregard would not suffice was overruled. No further relief, even for a jury instruction, was requested. If there could have been any error, none is presented by these circumstances.

Appellants also complain that the court erred in permitting evidence of an extraneous offense. This claim relates to the testimony of Johnny Meyer, Temple police officer, who on direct examination simply related that at 2:30 a. m. on December 3, 1969, he had seen the appellants together in a car. He described their clothing. On cross-examination Frison's counsel inquired about Frison's clothing "on the night of the arrest * * * in Temple, Texas." On re-direct examination the witness was asked what arrest defense counsel had reference to and he answered "carrying concealed weapon." The objection then made was sustained and the jury was instructed to disregard the question and answer. The mistrial motion was denied. On direct examination both appellants testified that they had been arrested on December 3rd in Temple. On cross-examination Frison acknowledged that he had a gun with him on December 3rd. The subsequent objection was first overruled and then sustained and no action taken on the request for a jury instruction. After a conference at the bench no further relief was requested. On cross-examination Watts acknowledged he carried a pistol on December 3rd which belonged to Frison.

The subsequent objection was sustained and no further relief was requested.

Officer Meyer was later recalled during the trial by the State. Upon direct examination he identified a pistol he had received on December 3rd from Frison. Only after he stated Frison claimed the gun as his, was there an objection. The mistrial motion was denied, but the objection was sustained and the jury instructed to disregard "it." On cross-examination Frison's counsel inquired into certain details of the arrest including the number of persons arrested and whether Frison's black Russian hat had fallen off. On re-direct examination the prosecutor, noting defense counsel had inquired about the details of the December 3rd arrest, elicited the fact and time of arrest and that a pistol had been "taken off Mr. Watts." On re-cross Frison's counsel established Watts was carrying the pistol in his jacket, and Watts' counsel on re-cross developed other details of the arrest and the search and that Meyer had gone at 2:30 a. m. to the scene in response to "a call of suspicious car driving around one of our motels" which had been previously robbed four or five times within the month.

█ Extraneous offenses as exceptions to the general rule prohibiting their admissibility may become admissible if part of the res gestae or to show identity of person or crime, intent, motive, scienter and system. "Evidence of other crimes is also admissible to discredit the accused when he testifies in his own behalf or to show his failure to have reformed, or to controvert a defensive theory advanced by him." 23 Tex.Jur.2d, Evidence, Sec. 195, p. 300.

█ It would thus appear that Officer Meyer's testimony as to the arrests on December 3rd would have been admissible, at least some time during the trial, in view of the hotly contested issue of identity of the two appellants and the interposed defense of alibi. Owens v. State, Tex.Cr. App., 450 S.W.2d 324 (1970).

█ Assuming the question and answer originally elicited on the first re-direct examination of the witness was error, the error, if any, was cured by the court's jury instructions to disregard both question and answer. Mays v. State, Tex.Cr.App., 434 S.W.2d 140.

█ Further, the appellants having first inquired about the fact of arrest, they are not in a position to complain if the State elicits information about the same matter. Cf. Brown v. State, Tex.Cr.App., 457 S.W.2d 917.

In view of all circumstances described above, clearly no error is presented.

Appellant Frison next contends the court erred in permitting Officers Meyer and White to testify at the penalty stage of the proceedings that his reputation for being a peaceful and law abiding citizen was bad. Appellant Watts complains only of Meyer's testimony. Reliance is placed upon Weatherall v. State, 159 Tex.Cr.R. 415, 264 S.W.2d 429 (1954) where it was held that a witness must be shown to be qualified to express an opinion that a person's general reputation for being peaceful and law abiding is bad before expressing such opinion.

On direct examination, after some hesitation, Officer Meyer testified he had heard Frison's reputation for being a peaceful and law abiding citizen discussed. He related that such reputation was bad. On cross-examination he admitted he had not known either appellant prior to their arrest in Temple and had not heard their friends discuss their reputation. He was then asked:

"Q. Are your basing your testimony as to their bad character, strictly upon the fact they were arrested there in your county?

"A. No, sir * * * well * * *

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. You are telling the jury they have bad character, because they were arrested down there, aren't you?

"A. Yes, sir."

The motion to strike the testimony of this witness was denied.

Dale White, Temple police officer, testified he did not know either appellant prior to their arrest on December 3, 1969, but had heard their reputation for being peaceful and law abiding citizens discussed since that time. He related that reputation was bad.

On cross-examination he was asked:

"Q. And your testimony is based strictly upon your own observations of the fact that they were arrested in Temple on December 3rd, and were in jail after that?

"A. Yes, sir."

The motion to strike White's testimony was denied. On re-direct examination White reiterated he had heard the reputations discussed.

Two other officers testified that the reputation in question was bad. Their testimony is not a part of the grounds of error alleged.

The rule prior to the 1965 Code of Criminal Procedure as to the time to which inquiry is directed was stated in 62 Tex.Jur. 2d, Witnesses, Sec. 197, p. 119, as follows:

"The inquiry touching the past conduct of the defendant, of which the witness has heard, must be confined to acts antecedent to the commission of the offense for which the defendant is on trial, and to matters of which the witness heard prior to that time. But the defendant may not complain of a failure to observe this rule where his own inquiries of the witness improperly include the time antecedent to the trial rather than to the offense. By applying for a suspension of sentence the defendant puts in issue his good reputation down to the time of the trial; *nevertheless testimony directed to his reputation between the time the crime was committed and the time of the trial will be excluded where that reputation is based solely on discussion of the alleged offense."* (emphasis supplied)

The authorities cited in support of the underscored portion of the quotation are Stephens v. State, 128 Tex.Cr.R. 311, 80 S.W.2d 980; Turner v. State, 129 Tex.Cr. R. 380, 87 S.W.2d 736; Diggs v. State, 129 Tex.Cr.R. 407, 88 S.W.2d 103.

Broadway v. State, Tex.Cr.App., 418 S.W.2d 679, took note of the former rule, but held that in light of Article 37.07, V.A.C.C.P., 1965, the accused's reputation could not be inquired into up to the time of the trial. See also Fletcher v. State, Tex. Cr.App., 437 S.W.2d 849; Glenn v. State, Tex.Cr.App., 442 S.W.2d 360; Ballew v. State, Tex.Cr.App., 452 S.W.2d 460; Chamberlain v. State, Tex.Cr.App., 453 S.W.2d 490.

The concurring opinion in Broadway, supra, by Judge Morrison, took the position that Stephens v. State, supra, still represented a correct statement of law.

Wilson v. State, Tex.Cr.App., 434 S.W.2d 873 (1963) cited the Broadway rule with approval but also adhered to the rule in Stephens that reputation at the time of the trial should not be provable "when such reputation is based solely on the discussion of the alleged offense for which he is on trial." In Wilson there was nothing to show that an officer's reputation testimony was based solely upon the burglary charge involved and it was held admissible. See also Martin v. State, Tex.Cr.App., 449 S.W. 2d 257, 260.

In Wright v. State, Tex.Cr.App., 455 S.W.2d 228 (1970), the investigating officer, who testified as to reputation, related his investigation had taken place since the date of the defendant's arrest for the offense charged in the case. The court said, "The knowledge acquired of the appellant as a result of the investigation was sufficient to authorize admission of his testimony." While Wilson was cited in support thereof among other authorities, the Wright holding appears in conflict with Wilson with regard

to the continued viability of the rule in Stephens.

As a result of the decisions since Broadway many prosecutors, as a matter of convenience if nothing else, have seized upon arresting or investigating officers for the purpose of giving reputation testimony. Certainly, if properly qualified, these officers are acceptable reputation witnesses. Jones v. State, Tex.Cr.App., 453 S.W.2d 507. And it is not necessary that a witness be personally acquainted with the accused in order to speak to his general reputation which the witness knows, Davis v. State, Tex.Cr.App., 23 S.W. 684; Cox v. State, Tex.Cr.App., 368 S.W.2d 600; Sanchez v. State, Tex.Cr.App., 398 S.W.2d 117, and the reputation need not have been discussed prior to the date of the alleged offense. Broadway v. State, supra; Glenn v. State, supra; Martin v. State, supra; Green v. State, Tex.Cr.App., 453 S.W.2d 166.

The difficulty arises in that it is not always clear from the record whether the officer-witness actually knows the general reputation of the accused in the community ·for the reputation in issue or is basing his opinion solely upon a discussion of the alleged offense for which the accused is on trial. If the latter is the case, the rule in Stephens, reiterated in Wilson and Martin, would prohibit him from expressing his opinion. And in so far as Wright v. State, supra, is in conflict with the rule in Stephens, it is overruled.

In the instant case Officer White testified he had heard the appellants' reputation discussed in the Temple police department and by certain Army personnel. At one point he did indicate his testimony was based upon the December 3rd arrest, but this statement appears to be somewhat clarified later and did not involve the charges upon which the appellants were being tried. Certainly we are unable to say that the record shows his reputation testimony was based solely upon the robbery charges here involved. Wilson v. State, supra; Martin v. State, supra. Officer Meyer's testimony presents a far closer question. A careful reading of the record shows he only expressed an opinion as to the appellant Frison's reputation on direct examination stating he had heard the reputation discussed. Although on cross-examination he agreed "they have bad character because they were arrested down there," he stated his testimony was not strictly based on the arrest in his county (Bell). Here again, the arrest referred to did not involve the charges upon which the instant trial was conducted, and the record fails to show Meyer's reputation testimony was solely based upon the robbery charges concerned. We perceive no reversible error. Wilson v. State, supra; Martin v. State, supra.

Lastly, appellant Frison complains of the State's closing argument in which reference was made to Officer Butler's testimony that he saw the appellants in the Bell County Courthouse, had a conversation with them and arrested them for the instant offense. The prosecutor noted in his argument that an objection had been made to the nature of the conversation and the witness did not answer the question. He added, "He didn't tell you what Joe Frison and Charles Watts told him, but you better know that they told him something."

Appellant's objection to this argument was overruled. While we do not consider the argument proper in view of the exclusion by the court of the nature of conversation, we do not conclude reversible error is presented. The fact that there was a conversation and the arrests followed was properly before the jury. In the State's opening argument reference was made to the conversation and it was stated, "You can just use your good old common sense and try to think what they talked about, but they don't want to talk about it now." To such argument there was no objection. Appellant's counsel later noted this earlier statement and argued that the prosecutor was trying to guess or imagine the appel-

lants into the penitentiary. He argued, "They had conversations with Butler, so you can imagine what was said. What was he [the prosecutor] inferring, that they confessed this crime or something? So imagine them into the pen, mind you. Well, it's an elementary proposition of law that no statement made under arrest is admissible in court. We don't know what Butler would say that was told him. Some of these officers will do anything to get a conviction, whether you believe it or not. We can't, as lawyers, allow that when the law says you can't do it, so we objected to it, and the learned Court, very promptly upheld our objection."

Under the circumstances presented, no reversible error is reflected by the closing argument. Where the same argument is made during the open argument by the State without objection, there is no error. 5 Tex. Jur.2d, Appeal and Error, Criminal Cases, Sec. 262. And no error is reflected in argument which has been invited by argument of defense counsel. Scarborough v. State, 171 Tex.Cr.R. 83, 344 S.W.2d 886; 5 Tex.Jur.2d, Appeal and Error, Criminal Cases, Sec. 438; 1 Branch's Ann.P.C., 2d ed., Sec. 383, p. 403.

■ This leaves only appellant Watts' challenge to the sufficiency of the evidence to sustain his conviction.

The complaining witness Harris was unable to make a positive identification of Watts, but related Watts "fits the description, the same height and the clean-cut attributes." He still was unable to make a positive identification when Watts and Frison were arrested in his presence in Belton.

Rufus Daniels testified he was present at the Consumer Service Station in Waco about an hour or so after the instant offense when Watts entered that station and robbed the attendant at gunpoint.

Other testimony showed that the appellants were frequently together and were arrested in Temple on December 3, 1969, in

possession of a pistol at 2:30 a. m. The court charged on the law of circumstantial evidence and the defense of alibi.

Viewing all the evidence in the light most favorable to the jury's verdict as we are required to do, we conclude the evidence was sufficient to sustain the verdict.

In Jones v. State, Tex.Cr.App., 442 S.W. 2d 698, it was said:

"It is not necessary that every fact point independently and directly to the guilt of a ·defendant. It is enough if the conclusion of guilt is warranted by combined and cumulative force of all incriminating circumstances. Parish v. State, 85 Tex.Cr.R. 75, 209 S.W. 678; Finch v. State, 89 Tex.Cr.R. 363, 232 S.W. 528." See also Taylor v. State, 87 Tex.Cr.R. 330, 221 S.W. 611, 615.

Finding no reversible error, the judgments are affirmed.