S. E. DUNCAN, JR., V. THE STATE.

No. 20315.   Delivered March 29, 1939.
Rehearing Denied June 7, 1939.

The opinion states the case.

*L. G. Mathews,* of Floydada, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The conviction is for burglary; the punishment assessed is confinement in the state penitentiary for a term of two years.

It was charged in the indictment that on or about the 24th day of April, 1938, appellant by force did break and enter the City Hall of Floydada, then and there occupied and controlled by Clyde Henderson, with intent to fraudulently take therefrom corporal personal property, etc.

The State's testimony shows that S. E. Duncan, Sr., was the City Secretary and Clyde Henderson was a Deputy Secretary. S. E. Duncan had been sick for quite a while and had not been at the office very much. Appellant, who was a son of S. E. Duncan, Sr., had theretofore worked for his father at the City Hall, collecting old checks and accounts, but he was not so engaged at the time of the alleged offense and had not been for several weeks prior thereto.

During the night on which the alleged offense was committed, the night watchman saw appellant at several different places. He saw him first about 11:45 P. M. in the domino hall of the Maxwell House Cafe. He next saw him with some parties in an alley behind the domino hall where they were engaged in an argument, and later saw him and Finley at the corner of the Floyd County National Bank going towards the post office. About an hour later, he saw him in front of the Texas Utilities' Office. Just prior to this time, he had seen some one

near the City Hall that he could not tell who it was, but testified that he "thought he knew who he was looking at." That when the person came into the light, he noticed that he wiped his hand or finger and then went across to the court-house lawn toward Enoch's Restaurant. The watchman then went to the east side of the City Hall, and discovered that the screen at each lower end had been cut and part of the window glass (5x7 inches) had been broken. The sheriff and city marshall were called and appellant was arrested near the restaurant while sitting in an automobile talking to some friends. A search of his person was made and the following articles found: A heavy water glass, a bill-fold containing some old checks payable to the city, a pocket knife, and a handkerchief with blood stains thereon. The next morning the officers discovered a small blood stain on the wall of the building near the lower part of the window. The Deputy Secretary testified that he did not know whether or not the checks found on appellant's person were in the office at the time he closed it for the day. Finley, a witness for the State, testified that on the night in question he was with appellant at the domino hall and in the alley. There they took a drink and then went to look for Mr. Roe and Charles Ryals because they wanted some more whisky. That they then went to Enoch's Cafe, and while there Ryals came and they all took a drink. He and Ryals then went into the cafe and ordered a cup of coffee for themselves and for appellant, but appellant did not come in. That they were in the cafe about five or ten minutes—only long enough to drink the coffee,—and when they came out, appellant was standing on the sidewalk. They then went to an automobile where appellant was arrested.

Appellant testified in his own behalf. He denied cutting the screen, breaking the window glass, or entering the building. He stated that he had had the old checks in his bill-fold for three or four months; that he obtained them when he was working for his father trying to collect for the city. He admitted having a small cut or scratch on one side of his fingers, but stated that he did not know how it came to be there.

It is obvious that this case rests entirely upon circumstantial evidence, as there is no eye witness to the commission of the alleged offense. It is the established rule in this State that to sustain a conviction upon circumstantial evidence each fact necessary to the conclusion sought to be established must be proved by competent evidence beyond a reasonable doubt, and all the facts necessary to such conclusion must be consistent with each other and with the main fact to be proved; and the

circumstances, taken together, must be of a conclusive nature, leading in the whole to a satisfactory conclusion of the guilt of the accused and excluding every other reasonable hypothesis except his guilt.

When we strip the testimony in the instant case of all the facts except the circumstances by which the State sought to connect appellant with the offense charged, we have the accused in town coming toward the restaurant from the direction of the City Hall; that he had a small cut on his finger, a blood-stained handkerchief, a bill-fold with old checks in it that belonged to the city, and a blood stain on the wall of the building. There were no blood stains found where the screen was cut or the window glass broken. Nor were any blood stains found on the drawer where the checks were kept, or on the checks or on appellant's bill-fold. The record is silent as to whether the blood stains on the wall appeared to be fresh or old.

Appellant was with Finley continually and at no time was he out of his presence, except for five or ten minutes after they had gone to the restaurant for coffee. It seems extremely doubtful that the accused could have walked from the restaurant to the City Hall, cut the screen, broken the window, opened the same, entered the building, taken the checks and returned to the restaurant within five or ten minutes.

Applying the rule of law relative to circumstantial evidence to the facts of this case, we do not believe the evidence meets the requirements. The circumstances at most raise but a suspicion or mere probability, and are not sufficient to sustain his conviction. See Duke v. State, 63 S. W. (2d) 552; Ray v. State, 80 S. W. (2d) 973. Appellant's possession of the old checks is of no probative force since it was not shown when he acquired them, whether on the night in question or at the time he worked for the city. The blood stain on the wall is of very little probative force since it is not shown that it was a fresh stain.

Having reached the conclusion that the evidence fails to show appellant's guilt beyond a reasonable doubt, the judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON STATE'S MOTION FOR REHEARING.

HAWKINS, Judge.

The District Attorney in behalf of the State has filed a courteous but vigorous motion asking us to again review the evidence and insisting that we reached an erroneous conclusion in holding the evidence insufficient. The attorney for appellant has filed a reply argument in which he is equally insistent that we correctly decided the case originally. In the light of these circumstances we have again carefully reexamined the evidence. One of the State's witnesses says there was a blood stain on the screen, and several speak of a stain or smear of blood on the wall near the window. The evidence without which the State could not hope to sustain a conviction is that regarding the checks found in appellant's bill fold. The pertinent evidence about them centers about a $400.00 check. Mr. Henderson, the party alleged to have had control of the building and property testified as follows: "I don't know whether there was anything missing out of the City Hall that had been there the night before. * * * I remember seeing a check for $400.00 by Drs. Smith and Smith *at some time*. I had been working there at *that time* since the 15th of March. Yes, sir, I worked some there before Mr. Duncan went off on his trip." If the evidence was certain that the $400.00 check was in the building at the time of the burglary, finding it in appellant's pocket immediately afterwards would relieve the case of uncertainty. But Henderson is not sure when he saw it there. He says, "at some time." It is thus left uncertain whether it was after appellant had quit working for his father trying to collect the old checks, or whether it was before appellant's father had gone away, at which latter time said check with others might have come into the innocent possession of appellant in the course of his efforts to collect the old checks.

The evidence may raise a strong suspicion of appellant's guilt, but after again reviewing it we think it does not measure up to the demand of the law of circumstantial evidence.

The State's motion for rehearing is overruled.