## O. B. Goode v. The State.

No. 21077.   Delivered June 5, 1940.
Rehearing Denied June 26, 1940.

The opinion states the case.

*Quinton Wright,* of San Diego, and *H. E. Lobdel,* of Decatur, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the State penitentiary for a term of five years.

It was charged in the indictment that on or about the 29th day of August, A. D., 1939, the appellant, O. B. Goode, "did then and there unlawfully, voluntarily and with malice aforethought kill Margaret Goode by shooting her with a pistol."

Appellant challenges the sufficiency of the evidence to justify and sustain his conviction. In the development of its case, the State relied entirely upon circumstantial evidence. The record shows that on the afternoon and night preceding the killing the appellant and the deceased were quarreling, fussing and cursing; that during the episode the deceased struck appellant with a salt-shaker. This fussing continued until about ten or eleven o'clock at night. A neighbor, who was sleeping within thirteen feet of where the deceased slept in her house, heard the appellant ask his wife to get up and fix him some breakfast. This was just a few minutes prior to the time that he heard the shot. This neighbor, although sleeping right at the window facing the spot from which the fatal shot was fired, did not see any one at that time about the premises or leave the same; that immediately after the shot was fired he heard some one walking in the Goode house. He then heard appellant call a neighbor who evidently was on his way over there. The neighbors immediately assembled at the Goode home. According to the testimony of some of them, he was on the back porch barefooted and bareheaded, while some testified that he had on shoes with rubber soles and rubber heels. Appellant requested that a doctor and the officers be sent for which request was complied with. When the officers arrived at the scene, they found the deceased lying on the bed. She had been shot in the left breast. The bullet went entirely through the body and made its exit near the spine below the shoulder blade and was found resting in a pillow. The bullet proved to have been fired from a .45 caliber pistol. The officer made a thorough search of the appellant's home, the premises, and the adjoining cabins but found no .45 caliber pistol or shells. They did find, however, in the appellant's room a .38 caliber Smith & Wesson pistol, but so far as the record shows, this pistol had not been fired.

The officers discovered two human foot prints running parallel with the window through which the shot had been fired. They took the appellant's shoes and fitted them into the foot prints, and according to their testimony, they fitted perfectly. They testified that one of the shoes had a hole in the sole and this was plainly visible in the foot print. It appears from the testimony that no other foot prints were found; that

the surface of the ground was rather hard so that foot prints would not be visible except at the spot where the wind had blown up some dust. The appellant was immediately taken to jail and confined.

Later during the day a doctor melted some paraffin in two separate vessels. He dipped the appellant's right hand in one and his left hand in the other and then waited until the paraffin had solidified on his hands, when he cut it off and applied some sulphuric acid. The testimony discloses that when the acid was applied to the paraffin which had been cut from the right hand, it showed some blue specks and small streaks between the index finger and the thumb of the right hand. The paraffin taken from the left hand did not disclose anything. A person employed by the Texas Public Safety Commission in this character of work admitted that this was not an infallible test. The officers also found some spots of blood on the hook and eye to the screen door leading to the porch. Upon a close examination of the bullet found in the pillow, it revealed the fact that it had been fired through the screen from the outside of the building. Appellant admitted that he and his wife had quarreled and fussed on the afternoon and night preceding the alleged homicide; that they had been drinking, but he denied having killed his wife.

There was testimony to the effect that appellant and his wife quarreled and fussed quite frequently. A number of witnesses testified to the good reputation of the appellant as a law-abiding man.

The foregoing are in substance the salient facts and circumstances proved on the trial.

The rule by which circumstantial evidence may be measured in order to determine its sufficiency is stated in Tex. Jur., Vol. 22, p. 915, sec. 244, in the following language: "To warrant a conviction on circumstantial evidence, every element of the offense must be proved beyond a reasonable doubt. * * * The circumstances taken together must be of a conclusive nature, and must produce in effect a reasonable and moral certainty that the accused and nobody else committed the offense. They must exclude every reasonable hypothesis other than that of his guilt, and if the proof reveals only a mere possibility of guilt the conviction cannot stand. It is not necessary, however, that any one of the circumstances proved shall suffice to sustain the conviction, nor that each fact, standing alone, be of such weight as to establish guilt; on the contrary, all the facts

which the jury are authorized to believe from the evidence are to be considered collectively and it is sufficient if a conclusion of guilt is warranted by their combined force."

Now, let us analyze the evidence adduced, as reflected by the record, and see whether it meets the requirements of the law. The fact that the deceased and appellant quarreled and cursed each other tends to show that some ill feeling existed between them. This at best showed but a motive for the commission of the offense. However, the unpleasant conduct on the part of both of them was not an unsual occurrence. We have also the two foot prints near the window through which the fatal shot was fired. These foot prints were parallel with the window and appeared to have been made by a person walking by the window going south, but no foot prints leading up to the window were found. It would seem that the person who fired the fatal shot would have walked up to the window as well as away from it. Hence, the two foot prints found to have been made by appellant might have been made by him some time before the shot was fired. Appellant resided there, and according to the testimony, he had flowers and shrubbery in the yard which he watered and therefore it would be but natural for his foot prints to be found on his premises. Consequently, the finding of the appellant's foot prints next to his home where he walked and had a right to walk would be of little probative force. If those foot prints had been made by some other person who would not ordinarily have been about the premises, they, no doubt, would be of greater cogency. The test made with the paraffin, according to the State's witness, was not an infallible one and therefore amounts to nothing more than a strong suspicion. The pistol with which the homicide was committed was not found in the appellant's home, nor on his premises or in any of the adjoining cabins, although the officers made a diligent and careful search therefor; neither did the officers find any shells that fitted a .45 caliber pistol. If we take the combined circumstances proved, do they produce in effect a reasonable and moral certainty that the accused and no one else committed the offense? Do they exclude every reasonable hypothesis other than the guilt of the accused so as to establish his guilt beyond a reasonable doubt? We do not think so. Proof which reasonably creates a strong suspicion or a possibility will not suffice to sustain a conviction. Of course, there is no fixed rule for determining the sufficiency of the evidence in every instance. Each case must be tested by its own facts.

Having reached the conclusion that the evidence does not measure up to the requirements of the law to authorize and sustain the conviction, we are in duty bound to reverse the judgment. See Milligan v. State, 97 Tex. Cr. R. 544; Owens v. State, 115 S. W. (2d) 920, and cases there cited.

It is therefore ordered that the judgment of the trial court be, and the same is, reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

Our re-examination of the statement of facts in the light of the State's motion for rehearing leaves us of opinion that the evidence is not sufficient to support the conviction.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.