JIM THOMAS V. THE STATE.

No. 23680. Delivered June 28, 1947.

*John B. McNamara* and *C. S. Farmer*, both of Waco, *Curtiss Douglass*, of Pampa, *George McCarthy*, of Amarillo, and *R. Temple Dickson*, of Sweetwater, for appellant.

*Ernest S. Goens*, State's Attorney, of Austin, for the State.

KRUEGER, Judge.

Appellant was convicted of the offense of murder and his punishment was assessed at confinement in the state penitentiary for life.

His chief contention is that the evidence is insufficient to sustain his conviction.

The record reflects that on the morning of October 26th, 1943, the dead bodies of Dr. and Mrs. Hunt were found on a bed in their bedroom and were identified. Dr. Hunt was shot between the eyes and Mrs. Hunt was struck on the head with some instrument. There is no question but that they died from the effects of the wound inflicted upon them.

The record further reflects that appellant was a paroled convict. His parole was a conditional one in that he was not to leave Galveston County. On or about the 22nd day of October, he violated the parole by going to Amarillo to visit Sid Veazey and family who were his friends for many years. He arrived at the Veazey home late in the afternoon on Saturday, October 23rd, 1943. The following Sunday afternoon he borrowed Mr. Veazey's automobile but returned to the Veazey home some time during the night. Thus the evidence conclusively shows that he was in Amarillo at the time in question. On Monday afternoon, he borrowed an automobile from G. A. Craig, also a friend, which he returned the next morning. The State's evidence also shows that he told Mrs. Veazey that he went to the Craig apartment that night to return the automobile and keys, but saw no light and assumed that they were asleep; that he then came to the Veazey home but found the doors locked so he went back to town.

Eddie Glass testified that he owned and operated a cafe in the town of Littlefield; that on Sunday night, October 24th, appellant was in his cafe between the hours of 8:00 and 9:00 P.M. and again on Monday night about the same time. This testimony places appellant in the town of Littlefield from five to six hours prior to the commission of the offense.

We next have the testimony of the investigating officers. Their testimony is to the effect that they found human foot prints about the premises of Dr. Hunt which apparently were made by a person wearing tennis shoes. Sid Veazey's son had a pair of tennis shoes which had been considerably worn. These shoes were found by the Rangers in a closet in the room occupied by Mr. Veazey's son. The officers took these shoes and requested the boy to examine them which he did and he then identified them as his shoes. No markings or buffing were pointed out to him at the time and he did not notice any. Some months later a Texas Ranger took these shoes to Arkadelphia in Arkansas where the Veazey boy was stationed in the Army and pointed out to the boy certain markings or scratches thereon which he termed buffing. The boy, upon being shown these markings, then noticed them. The testimony shows beyond question that if the shoes were in the same condition on the night in question as when brought to the Department of Public Safety in Austin, Texas, they could not have made the tracks found about the home of Dr. Hunt.

The officers also found tracks in an alley to the rear of the Hunt home which were made by automobiles. These tracks disclosed that an automobile having a Lee tire on the left front wheel had been in the alley. The Craig automobile which appellant had borrowed on Monday afternoon and which he returned to Mr. Craig on the following morning had a Lee tire on the right front wheel. It will thus be noted that unless the Lee tire on the Craig car was changed from the left front wheel to the right front wheel after leaving the alley, it was not the Craig car which was in the alley. The record does not show that any such change took place.

The next circumstance upon which the State relies is a damaged place on and under the running board of the Craig car which indicated that it had been driven on or against some hard object which had broken the metal binding or guard on the side of the running board and had made some scratches under it. The testimony also shows that the officers found a rock or a cement block in the alley of which the top was broken which might have been done by an automobile having been backed into it. Whether the damage to the car and the rock appeared to have occurred recently is not disclosed by the record. Mrs. Hnulik, who at the time was Mrs. Craig, testified that some time prior to the time Thomas borrowed the car she ran into the curbing while parking the car in Amarillo and

had damaged the running board. She further testified that at the time the officers came to inspect the car, she told them that she had backed the car on to a curb and damaged the running board and pointed out the place to them where it occurred. She also testified that one of the prosecuting attorneys and another person wearing a blue suit took her into the private chamber of the presiding judge a few minutes prior to the time she took the witness stand and threatened to prosecute her for perjury if she testified to a lie.

The next circumstance is a piece of string which was similar to a string found on the bed when the dead bodies of Dr. and Mrs. Hunt were discovered. This piece of string which was about two inches in length was found in a stove located in Mr. Veazey's garage and repair shop some 120 miles from the scene of the killing. Who placed the string in the stove or how long it had been there is left to conjecture. However, Mr. McLaughlin, Chief of the Bureau of Identification and Records in the Department of Public Safety, testified that he examined both of the strings with a micrometer and found that both strings were, as near as they could be measured, of the same thickness and diameter, both were composed of cotton fiber and contained the same degree of firmness. The strings, being of soft material, wouldn't actually fit back together, but they could almost be placed right into the position of each of the strands which were cut, thereby fitting back together. On cross-examination, the witness testified, "I can't say positively that at one time the long piece of string and the short piece of string were one and the same string. They could have been one piece of string, they are similar."

The State proved also that on the 26th day of October appellant called the Craig home to borrow Craig's car. Mrs. Craig informed appellant that her husband intended to go to Shamrock and would need his car. Appellant then asked Craig to take him to Childress if he was going to Shamrock which he did and from there he went to Vernon where he placed a telephone call under the name of Wilson to a Mrs. Hall at Galveston who advised him that he had better get back to Galveston as the sheriff was looking for him. He told her to tell the sheriff that he would be back there the next morning. He did go back to Galveston, engaged a room at a hotel where he registered under the assumed name of J. C. James. When an officer appeared at his room and addressed him as Mr. James, he remarked, "Yes, Sir." An inspection of his person disclosed an old wound on the upper part of his right leg by which he was

identified as Jim Thomas, the defendant. The record is silent as to why the sheriff was looking for him. Whether he was looking for him because he had violated the parole or in connection with the offense charged in the indictment in this case is not disclosed in the record.

There is no testimony from any source that appellant knew the location of Dr. Hunt's home or was familiar with the different rooms therein, nor is there any evidence that he knew Dr. Hunt.

Now, let us analyze the evidence. It will be noted from the brief summary of the facts proved on the trial that appellant's connection with the horrible crime depends entirely on circumstances. This calls for an application of the rule of law relating to circumstantial evidence which is as follows: In order to warrant a conviction on circumstantial evidence each fact necessary to the conclusion sought to be established must be proved by competent evidence beyond a reasonable doubt; all the facts must be consistent with each other and with the main fact sought to be proved; and the circumstances, taken together, must be of a conclusive nature, leading, on the whole, to a satisfactory conclusion, and producing in effect a reasonable and moral certainty that the accused, and no other person, committed the offense charged. It is not sufficient that the circumstances coincide with, account for, and therefore render probable the guilt of the defendant; they must exclude every other reasonable hypothesis except that of defendant's guilt, and unless they do so beyond a reasonable doubt, the evidence is not sufficient to warrant a conviction.

Now let us analyze the circumstances proved in the instant case in order to determine whether or not they meet the requirements of the law. That appellant was in the town of Littlefield on the night of October 25th is not questioned, but there were, no doubt, many people in the town at the time. Consequently, the fact that he was in said town several hours prior to the time of the commission of the offense is within itself of little value unless there are other and further circumstances which connect him with the commission of the offense beyond a reasonable doubt. The fact that human tracks were found about the Hunt premises which indicated that they were made with tennis shoes would not connect the appellant with the tracks unless it be shown beyond a reasonable doubt that he had such shoes and that the tracks were made with the particular shoes. Now what facts are there in this record which

connect him with having made said tracks? A pair of tennis shoes belonging to Sid Veazey's son were found in a closet adjoining the son's room to which appellant had access. These shoes were taken in charge by the officers and were presented to Mr. Veazey's son for identification. He was requested to examine them closely with the purpose of identifying them as his shoes which he did. No particular marks or abrasions on the shoes were called to his attention at the time nor did he notice any. However, he identified them as his shoes. Some months later these shoes were taken by an officer to Arkadelphia, Arkansas, where the Veazey boy was in the Army and the shoes were again shown to him and what appeared to be certain marks or abrasions were pointed out to him and it was then that the boy for the first time noticed the same. When and by whom these marks and abrasions were made or how long the marks or abrasions had been on the shoes remains an unsolved problem.

The fact remains however that if the shoes were in that condition on the night in question, they could not have made the tracks found at the Hunt home. Consequently, it devolved upon the State to prove that the shoes in question were not in the condition that they were in at the time of the commission of the offense. The State sought to discharge that burden by proving that there was a buffing machine and a wire brush in the Veazey garage to which appellant had access and therefore that appellant scratched or buffed the shoes after the commission of the offense. To connect appellant with the commission of the offense by means of the shoes, we will need to infer or presume that since he had access to the shoes he used them and then upon that presumption, we must base the further presumption that he buffed the shoes after the offense was committed and returned them to the closet. It is a well recognized rule of evidence that one presumption cannot be based upon another presumption.

In regard to the short piece of string found on the grate of the oildrum stove in the Veazey garage, the expert witness testified repeatedly that he could not swear that it was a part of a similar string found on the Hunt bed. As far as the witness would go was to say it was similar, and might have been a part of the same string. The jury could not be more certain than the witness in passing upon this circumstance, and the evidence fails to measure up to the requirement of the law in establishing such incidents as a circumstance against appellant. See Wood v. State, 145 S. W. (2d) 194.

The damage to the Craig car is of little value since Mrs. Hnulik, the former Mrs. Craig, testified that she ran or backed the car into a curb in Amarillo and damaged the car at the place indicated. The fact that the Craig car had a Lee tire on the right front wheel while the car that entered the alley in the rear of the Hunt home had a Lee tire on the left front wheel does not strengthen the fact that it was the Craig automobile which had made the tracks in the alley on the night in question.

Having reached the conclusion that the evidence is insufficient to sustain the conviction, the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.