FREIDA FREELS V. THE STATE.

No. 24020. Delivered April 28, 1948.

*Horton B. Porter,* of Hillsboro, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

Appellant was convicted of the offense of an assault with intent to murder. The punishment assessed is confinement in the state penitentiary for a term of three years.

It was the State's theory that appellant shot her husband with the intent to kill him. The injured party testified that he and appellant had been married about fifteen years at the time of the unfortunate occurrence; that they had one child, a girl about fourteen years of age. He further testified that their married life was not a happy one; that for the past seven years, they had not slept in the same room or cohabited; that on the day in question, appellant and her daughter went to the church which was located not a great distance from their home to sweep and clean it up for the next day's services; that they left home about 11 A. M. and returned home about 2 P. M.; that during their absence he remained at home; that when the wife and daughter returned, he went to the kitchen, got a drink of water and then started to go to the barn; that on his way to the barn he heard the kitchen door slam; that as he reached around to open the gate, he felt something strike the left side of his chest as if a wasp had stung him; that he immediately fell to the ground and became unconscious and remained unconscious until the next morning when he heard the church bell ringing, at which time he discovered that he was lying in the hay loft of the barn, but he did not know how he had gotten there. He then became unconscious again and remained in that condition until Monday morning; that he did not remember who took him from the loft, however, he heard someone talking but did not know who it was. He remembered that they put him on a little bed in the yard and then he passed out again and did not know anything until Monday morning while at the hospital. He testified further that he owned a .22 caliber rifle and a shotgun. The rifle was kept in the kitchen behind the door while the shotgun was kept in his bedroom. The rifle was sitting behind the kitchen door when he went out to the barn. The rifle was found Sunday morning by Mr. Hugo, who was assisting the officers in making an investigation. An examniation of the rifle revealed that it had an empty shell in the barrel which had been fired recently.

The State also proved that the injured party carried a life insurance policy in the sum of $1,000.00 payable to appellant on his death.

Appellant denied that she shot the injured party. She said that on the 4th day of April, 1947, he assaulted their daughter and from that day on she refused to have anything to do with him; that on Saturday she and her daughter went to the church about 11 A. M. to sweep and clean it up for services the next day; that she and the daughter returned to their home about

2 P. M. at which time appellant went towards the field and thereafter she did not see him any more; that during the early part of the night she heard someone on the back porch shaking or rattling the door; that she asked who was there but received no reply. The next day blood smears were discovered on the wall. A neighbor who passed along the road about 3 P. M. said that he saw the injured party lying on the ground looking over the woodpile. On Sunday afternoon after the injured party had received medical attention, a neighbor and friend visited him at the hospital at which time he told the friend that he shot himself. The attending physician testified that the injured party was shot in the left chest near the nipple; that the bullet passed through the body and made its exit in the back. Mrs. Kaddats testified that she, appellant and some others who live in that vicinity were on a party telephone line; that on Saturday afternoon and night she overheard a conversation between appellant and her mother; that in this conversation she heard the mother say, "Where is he now," to which appellant replied, "He is lying on the woodpile, the other thing is there too." Whereupon Mrs. Hugo asked her, "The rifle?" to which appellant replied, "Yes, three or four feet from him." This was about 3 P. M. At about 6 P. M. this witness again listened in on a conversation between Mrs. Hugo and appellant at which time Mrs. Hugo again inquired of appellant, "Where is he now?" to which appellant replied, "The little girl saw him walking in the garden about four o'clock." At about 8 P. M. this witness again listened in on a telephone conversation between Mrs. Hugo and appellant at which time she overheard appellant tell Mrs. Hugo to call those from up yonder and soon thereafter she heard Mrs. Hugo tell the telephone operator that she wanted to talk to the sheriff at Hillsboro.

In this case, the accused's connection with the offense charged depends upon circumstantial evidence. The sole question is whether or not the circumstances proved are sufficient to justify and sustain her conviction. In order to determine this issue the well established rule by which to measure the sufficiency of the evidence must be kept in mind, which is as follows:

"In order to warrant a conviction of a crime, on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved by competent evidence, beyond a reasonable doubt; all the facts must be consistent with each other, and the main fact sought to be proved; and the circumstances taken together, must be of a conclusive nature leading on the whole to a satisfactory conclusion and producing in effect

a reasonable and moral certainty that the accused and no other person committed the offense charged."

In short, the evidence must exclude every other reasonable hypothesis except the guilt of the accused. The evidence adduced upon the trial as the same appears in the statement of facts is in many important respects meager and indefinite. That Gerhard Freels, the husband of defendant, was shot with a .22 caliber gun at the time and place in question is definitely shown, but who fired the shot which inflicted the wound on his person is, in our opinion, not shown to the exclusion of every other reasonable hypothesis except the guilt of the defendant. The injured party did not hear the shot fired, nor did he see the accused on the back porch of their home, nor did he see her with the .22 caliber rifle. He testified that he was going from the back porch to the barn and as he was in the act of opening the gate with his left hand something struck him in the left chest which felt like a wasp had stung him; that he fell to the ground and passed out and remained in that condition until the next morning when he heard the church bell ringing, then became unconscious again until Monday morning while in the hospital. The next morning when the officers and neighbors arrived, they found, a .22 caliber rifle at the woodpile which contained an empty shell that had been recently discharged; near the rifle they found blood on the ground and evidence which indicated that someone had wallowed there, blood smeared on the wall of the back porch, and the injured party was found in the hay loft of the barn. Who left the rifle at the woodpile? Who bled and wallowed at the woodpile? Who smeared the blood on the wall of the back porch? Why was the injured party up in the hay loft? These facts are all unexplained by anyone and the circumstances themselves do not connect appellant with the commission of the alleged offense. A neighbor who passed by the home of the injured party on Saturday afternoon about 3 P. M. said that he saw the injured party lying on the ground near the woodpile resting on his elbows looking over the woodpile. He made no explanation thereof. On Sunday afternoon while a friend was visiting him at the hospital he admitted that he shot himself. However, he later denied that he made the statement to his friend. It occurs to us that the evidence in this case fails to establish appellant's guilt beyond a reasonable doubt.

The facts and circumstances of the case do not prove beyond a reasonable doubt who shot the injured party. It is our opinion that the facts and circumstances point just as strongly to the injured party as they do to the appellant with having inflicted

the wound. Proof which only amounts to strong suspicion, or mere probability, is not sufficient to support a conviction.

From what we have said, it follows that the judgment of the trial court should be reversed and the cause remanded and it is so ordered.

Opinion approved by the Court.