STATE

v.

ARKANSAS FUEL OIL CO. et al.

No. 10163.

Court of Civil Appeals of Texas.

Austin.

April 14, 1954.

Rehearing Denied May 26, 1954.

312

John Ben Shepperd, Atty. Gen., Willis E. Gresham, Asst. Atty. Gen., Hugh Lyerly, Asst. Atty. Gen., for appellant.

H. C. Walker, Jr., Robert Roberts, Jr., Shreveport, La., Carey K. West, Jr., Fort Worth, for Arkansas Fuel Oil Co.

R. O. Mason, Bartlesville, Okl., Cecil C. Cammack, Fort Worth, for Cities Service Oil Co.

Lloyd F. Thanhouser, Harry G. Dippel, Ward T. Jones, and Burney Braly, Houston, for Continental Oil Co.

Ireland Graves, Austin, H. C. Manning and Archie Gray, Houston, for Gulf Oil Corp.

Ben H. Powell, Austin, Rex G. Baker, Nelson Jones and David T. Searls, Houston, for Humble Oil & Refining Co.

Earl L. Brown, Chas. B. Wallace, Dallas, Dan Moody, Austin, for Magnolia Petroleum Co.

Everett L. Looney, Austin, J. F. Hulse, and Louis A. Scott, El Paso, for Standard Oil Co. of Texas.

John C. Jackson, Robert J. Derby, and S. A. L. Morgan, Houston, Black & Stayton, and Charles L. Black, Austin, for the Texas Co.

Sloan Blair, and Gillis A. Johnson, Ft. Worth, Coleman Gay, Austin (Walter E. Brown and V. R. Tomlinson, New York, N. Y., of counsel), for Sinclair Refining Co.

Walter L. Barnes, Bartlesville, Okl., E. H. Foster, Amarillo, for Phillips Petroleum Co.

GRAY, Justice.

This cause is one that is usually termed an anti-trust suit. It was filed by appellant, the State of Texas, under Section 26 of Art. 1, Constitution of Texas, Vernon's Ann.St., and Title 126, Arts. 7426–7447, Vernon's Ann.Civ.St., against appellees, ten oil companies, each authorized to do business in Texas either by charters or by permits issued prior to July, 1946.

Appellant's petition consists of one hundred typewritten pages to which petition

appellees directed approximately two hundred and fifty special exceptions. This statement makes it apparent that a detailed statement of the petition and the exceptions is not practical for the purposes of this opinion. Only general statements as to the contents of the petition will be made, however, it is our opinion that the petition contains sufficiently detailed statements and allegations in support of the general allegations herein mentioned. Also, the special exceptions will be noticed in such general groups as will enable us to dispose of the questions presented.

The petition names the several appellees, their respective predecessors, affiliates and parent corporations, and alleges that they are and have been doing business in Texas. It states the purpose of the suit is to perpetually enjoin appellees and each of them from making or engaging in any combination of their capital, skill and acts, agreements, conspiracy or conduct in violation of the Constitution and statutes, supra, and to collect penalties from each. It alleges:

"* * * that since July 29, 1946, there has existed among the defendants a combination of their capital, skill and acts, all as hereinafter more specifically alleged, for the following purposes:

"1. To create and tending to create and carry out restrictions in the pursuit of the business of marketing gasoline within the State of Texas.

"2. To fix, maintain, and increase the tank wagon price of gasoline within the State of Texas.

"3. To prevent and lessen competition in the manufacturing, refining, and marketing of gasoline within the State of Texas.

"4. To fix and maintain a standard or figure whereby the tank wagon price of gasoline marketed within this State is affected, controlled, and established."

The terms used in the petition are defined, however, at this point we deem it necessary to quote only one of such definitions, viz.:

"The term 'tank wagon price' as used herein refers to the price (exclusive of all taxes) at which gasoline is delivered in bulk lots by bulk agents, consignees, jobbers, distributors, or wholesalers to retail dealers, service stations, company service stations, and other retail distributors."

The petition alleged that: each appellee, its affiliate or subsidiary, produces crude oil in the State, some of which is refined by the producer, some is sold to other appellees, and some to persons not parties to the suit; that appellees do not produce all of the crude oil used by them but make purchases from other producers; that as a part of the conspiracy alleged, appellees have agreed to maintain and, except in one named instance, have maintained uniform and noncompetitive prices paid for crude oil purchased in the different fields in Texas and that such agreement is a part of the alleged conspiracy. It states that when it is alleged that anyone or more of appellees did any act it is meant that it was done by authorized directors, officers, agents, servants and employees. It is alleged: that the conspiracy and agreement between appellees had its inception prior to July 20, 1946, the exact date being unknown to appellant but well known to appellees; that it is the outgrowth of long planned action by appellees; that in 1946, when the decontrol of prices by Congress became apparent appellees saw the opportunity to place their agreement into effect; that when price controls were ended on July 1, 1946, appellees on or about July 29, 1946, placed their agreement into effect in Texas, and that the

"* * * activities described hereinafter both manifest the existence of the combination and have made possible the effectuation of it. Such activities are:

"1. The participation by the defendants in trade association activities

during many years prior to the date of this petition, as hereinafter detailed.

"2. The standardization of gasoline through the co-operative efforts of the defendants and other parties, as hereinafter detailed.

"3. The employment by defendants of 'exchanges' of gasoline, as hereinafter detailed.

"4. The concerted efforts on the part of defendants to maintain uniform and non-competitive posted crude oil prices as among themselves, as hereinafter set out.

"5. The existence of identical tank wagon gasoline prices among defendants since on or about July 29, 1946, which said identical prices have been coupled with practically simultaneous increases on tank wagon gasoline prices by the defendants and the existence of a uniform price for each grade of gasoline in all areas in Texas, regardless of freight costs involved. Likewise, in making any change in tank wagon gasoline prices, each defendant did so with knowledge that each of the other defendants had done or would do likewise."

The petition alleges the geographic locations of appellees' refineries; that through their combined efforts appellees have accounted for and controlled approximately 80 per cent of the entire business of marketing gasoline through their bulk storage plants, and that approximately 90 per cent of the retail outlets within the State market gasoline under the trade name or brand of one or the other of appellees. Appellees' participation in various named trade associations is alleged together with the adoption in 1928 of a code known as "Code of Practices for the Marketing and Refining of Petroleum Products"; that such code was accepted by each of appellees; that appellees along with others sought to encourage and foster observance of the code by members of the petroleum industry in Texas and that this activity continued until the enactment of the National Industrial Recovery Act in 1933, 48 Stat. 195. It is alleged that three grades of gasoline are manufactured and marketed by appellees; that these three grades were standardized; that a practice of the exchange of gasoline with each other has been adopted by appellees; that such exchanged gasoline is delivered by the receiver to the retail outlets as the product of the receiver under its trade name; that the cost of manufacturing and marketing gasoline in Texas is not the same but varies as between the several appellees; that appellees have failed to utilize their respective competitive advantages arising by reason of the location of their respective refineries; that appellees have maintained identical prices of the three grades of gasoline and of crude oil; that price changes for crude oil and gasoline by appellees has occurred simultaneously and as the result of communications had between appellees; that appellees' prices on tank wagon gasoline in Texas is higher than their prices in other states more distant from the production of crude oil and appellees' refineries in Texas; that the uniform prices, and the identical and almost simultaneous price increases on gasoline which have occurred within the State since July 29, 1946, are in part artificial, are not the result of competition, are not justified by economic conditions, are the result of the combination and conspiracy alleged and are not justified by increases in the cost of doing business during that period of time. It is alleged that the retail price of gasoline within the State is to a great degree dependent on the tank wagon price thereof; that as a consequence of the combination and conspiracy it is alleged that a direct effect has been and is being had upon the retail price paid by consumers within the State, and that unless restrained the conspiracy will continue to cause irreparable injury to the thousands of gasoline consumers in the State.

Appellant's prayer is for a perpetual injunction, for penalties and for the establishment and foreclosure of a lien on appellees' property within the State.

Upon a hearing the trial court sustained each of appellees' exceptions, appellant declined to amend, the cause was dismissed and appellant excepted.

■ This may properly be said to be a suit for penalties and in testing the sufficiency of the pleadings as against the exceptions urged by appellees the petition must allege:

"* * * all the statutory requirements with the same degree of certainty that is required in a criminal case. The petition in a penalty suit is not sufficient unless the essential facts necessary to constitute a violation of law are averred. The general rule that all reasonable intendments will· be indulged in to sustain a pleading in an ordinary civil case, does not apply to penalty suits. To the contrary, in penalty suits the plaintiff's pleadings are strictly construed, and will not be aided by inferences." Ford Motor Co. v. State, 142 Tex. 5, 175 S.W.2d 230, 233.

The first quotation, supra, from appellant's petition, together with the subsequent allegations, sufficiently allege the requirements of Arts. 7426–7429, supra. Insofar as applicable here the requisites of an indictment in a criminal case are set out in Arts. 396, 397, 398 and 405, Vernon's Ann.C.C.P. Requirements 4, 5, 6 and 7 of Art. 396 are supplied by the petition. Arts. 397 and 398 require that the indictment shall state everything that is required to be proved with such degree of certainty as to enable the accused to plead the judgment rendered in bar of a further prosecution for the same offense.

"The law does not require minuteness of detail, but demands only that the particular offense be set out with such certainty that a presumptively innocent man seeking to know what he must meet may ascertain fully therefrom the matters charged against him." Ford v. State, 108 Tex.Cr.R. 626, 2 S.W.2d 265, 266.

■ Art. 405 provides an indictment shall be sufficient if it charges the commission of an offense in ordinary and concise language in such manner as will enable a person of common understanding to know what is meant, and to give the accused notice of the particular offense with which he is charged and further, upon consideration will enable the court to pronounce sentence. Generally it is not necessary to negative exceptions and matters of defense. 23 Tex.Jur. § 35, p. 637. The petition is sufficient to meet the requirements of a suit for penalties. Authorities, supra; Pevely Dairy Co. v. United States, 8 Cir., 178 F.2d 363, certiorari denied 339 U.S. 942, 70 S.Ct. 794, 94 L.Ed. 1358.

Appellees say that appellant has alleged only circumstances and that it is necessary that the pleading negative every reasonable hypothesis except the guilt of appellees. They also say that appellant admits it has no direct proof but will rely on circumstantial evidence to establish its case.

■ The exceptions are addressed to the petition as it stands and in testing its sufficiency we are not to be governed by what the evidence may or may not subsequently show. Blanks v. Missouri, K. & T. Ry. Co., Tex.Civ.App., 116 S.W. 377, affirmed Missouri, K. & T. Ry. Co. v. Blanks, 103 Tex. 191, 125 S.W. 312.

In criminal cases resting entirely upon circumstantial evidence the rule for testing the sufficiency of the proof is:

" 'In order to warrant a conviction of a crime, on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved by competent evidence, beyond a reasonable doubt; all the facts must be consistent with each other, and the main fact sought to be proved; and the circumstances taken together, must be of a conclusive nature leading on the whole to a satisfactory conclusion and producing in effect a reasonable

and moral certainty that the accused and no other person committed the offense charged.'" Freels v. State, 151 Tex.Cr.R. 589, 210 S.W.2d 582, 583; Duncan v. State, 137 Tex.Cr.R. 226, 128 S.W.2d 810.

The foregoing is the rule for testing the sufficiency of the proof by circumstantial evidence in criminal cases after the evidence has been heard. It does not mean that every fact must independently and directly point to guilt but all proved facts and circumstances are to be taken together and it is not necessary that any one shall of itself be sufficient to sustain a conviction. Finch v. State, 89 Tex.Cr.R. 363, 232 S.W. 528; Maxwell v. State, 123 Tex. Cr.R. 391, 58 S.W.2d 822. However we think it is proper to here note that as to the matter of proof this is essentially a civil proceeding although it is penal in its nature.

The petition alleges the ability and opportunity of appellees to commit the offense charged; that the combination was to fix and maintain identical and noncompetitive prices on tank wagon gasoline in Texas; that the combination and conspiracy was entered into on or about July 29, 1946, and supports the allegations by alleging the nature and purposes of the agreement, the methods used, activities engaged in, participation in trade associations, the standardization of the three grades of gasoline manufactured and marketed, the exchange of gasoline, the establishment of noncompetitive prices for crude oil, identity of prices of gasoline, identical and almost simultaneous price increases, the different manufacturing and marketing costs of appellees, the failure to utilize geographic advantages, that such prices are in part artificial, are the result of mutual agreement and are not the result of normal economic conditions.

In Ford Motor Co. v. State, supra [142 Tex. 5, 175 S.W.2d 233], the Court said:

"Any intentional course of conduct by the parties to a contract which accomplishes the result of enabling the seller to dictate or control the resale price of goods or products sold by him for resale in Texas, or which enables the seller to cause the purchaser to confine his resales to a restricted territory in this State, or which otherwise accomplishes results prohibited by our anti-trust laws, violates the same." Ford Motor Co. v. State, supra.

And further said:

"Simply stated, we think that if Ford pursues a general policy of determining the prices which are to be charged for its products in Texas by Texas dealers, and then accomplishes that result by a course of conduct designed and intended for that purpose and calculated to accomplish it, it has violated our anti-trust laws just as effectively as if it had accomplished such result by direct contract."

The alleged conspiracy is not to be dismembered and determined by viewing its parts but must be looked to as a whole, and if the allegations as a whole show unity of purpose, or common design and undertaking, or the meeting of minds in an unlawful arrangement then the conclusion that a conspiracy existed is justified. American Tobacco Co. v. United States, 6 Cir., 147 F.2d 93, affirmed American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575; Ford Motor Co. v. State, supra. It is not essential that an act, if done by appellees separately, be in and by itself unlawful. It is the concerted action of appellees to accomplish an unlawful purpose that is denounced.

Section (b) of Rule 45, Texas Rules of Civil Procedure, provides that allegations of evidentiary matters or of legal conclusions shall not be grounds for objection if the pleading as a whole gives the opponent fair notice of the cause of action.

We think appellant's petition in its entirety is sufficient to give appellees fair notice of the charges against them; that the acts charged were the acts of authorized servants and agents acting for appel-

lees, and, on the whole, sufficient to advise appellees what they will be called upon to defend. Rule 47, Texas Rules of Civil Procedure. We also think the petition is sufficient as against appellees' special exceptions which under Rule 91, Texas Rules of Civil Procedure, are sufficient to point out the deficiencies complained of.

The petition names various officers and employees of appellees who have been in the active management and control of the business affairs and policies of appellees in establishing a pricing policy for gasoline marketed, who have authorized, ratified and assisted in the performance of the acts alleged, and that other employees whose names are not known to appellant but are well known to appellees participated in the making of the agreement and conspiracy with the approval and direction of appellees.

■ The fact that the petition alleges action by parties not known to appellant but alleged to be well known to appellees does not make the petition subject to special exception. Such names cannot in that manner be made an issue of law and thus require appellant to furnish information not in its possession. Russell v. Industrial Transp. Co., 113 Tex. 441, 251 S.W. 1034, 51 A.L.R. 1; Freedman Packing Co. v. Harris, Tex.Civ.App., 160 S.W.2d 130, error ref. w.o.m.

■ The failure of the petition to allege that the agreement was oral or in writing does not make it subject to special exceptions. The petition alleges that the agreement was put into effect on or about July 29, 1946, and it is not material to appellant's cause of action whether such agreement was oral or written. Brazos River Gas Co. v. McGarr, Tex.Civ.App., 113 S.W.2d 643; Gunst v. Dallas Trust & Savings Bank, Tex.Civ.App., 8 S.W.2d 806; Smith v. Patrick, Tex.Civ.App., 36 S.W. 762. In this last case the Court first affirmed the trial court's judgment but on motion for rehearing considered the question of evidence and concluded the evidence did not justify the judgment rendered by the trial court and reversed and rendered judgment. In Patrick v. Smith, 90 Tex. 267, 38 S.W. 17, 21, the Court considered the evidence, reversed the judgment of the Court of Civil Appeals and remanded the cause but in so doing said "We find no other error in the rulings of the court of civil appeals * * *." 10 Tex.Jur. p. 493, § 286; Tex.Jur.Sup., Vol. 8, p. 58, § 22, note 15, listing cases holding that it is not essential to plead that the contract is oral or in writing even when the statute of frauds is a defense. Furthermore, as we construe the petition it plainly alleges an agreement which is evidenced only by acts, conduct and circumstances and not by a writing subscribed by the parties.

Appellees say that because the time covered by the alleged conspiracy is the period beginning immediately after the close of World War Two judicial notice should be taken of economic conditions during that time together with the resulting effects on the subject matter of this suit.

It has been held that in passing upon the sufficiency of a petition as against a general demurrer "courts may take into consideration, in addition to the facts averred, other facts of which they take judicial notice." Martinez v. Gutierrez, Tex.Comm. App., 66 S.W.2d 678, 684; Wigmore on Evidence (1905 ed.) Vol. 4, § 2567, states the rule to be that judicial notice is not conclusive and

"That a matter is judicially noticed means merely that it is taken as true without the offering of evidence by the party who should ordinarily have done so. But the opponent is not prevented from disputing the matter by evidence, if he believes it disputable." McCormick & Ray, Texas Law of Evidence, §§ 78–82.

■ In applying economic conditions to the allegations before us the weight, if any, to be given such facts is a matter for the trier of the facts whether judge or jury. At most any presumption arising from such conditions is rebuttable. However

in passing on the special exceptions it must be borne in mind that the petition alleges that the prices complained of are artificial and are not the result of economic conditions.

Appellee Sinclair has, in a separate brief, advanced under its Fourth Counterpoint the contention that the State's petition "must be read in the light of current market history and commonly recognized facts in the oil industry, which offer a logical and innocent explanation for what happened," and in connection with this point has filed an Appendix titled "Current History and Common Knowledge Sources." This Appendix contains:

1. Excerpts from Handbook of Labor Statistics 1947 Edition, U. S. Department of Labor, Bureau of Labor Statistics, pp. 78, 107–113. (These excerpts consist of 8 pages of finely printed and very complex appearing tables of statistics.)

2. *Oil and Gas Journal*—Selected from period April, 1946 through 1947 and September-December, 1948. (Under this head are 83 pages containing more charts and tables and articles.)

3. *Oil Weekly*—Selected from period June, 1946 through June, 1947; *World Oil* from July, 1947 through June, 1948 and September, 1948—January, 1949; and *World Oil Yearbook* 1948. (153 pages from these trade periodicals are inserted containing more charts and tables and articles.)

4. Committee Report No. 2342 (Wolverton) to 80th Congress, 2nd Session, on "Petroleum Prices and Profits." (This report contains 159 pages.)

5. *National Petroleum News*—Selections 1946-7. (9 more pages of tables, charts and articles.)

6. *Texas Business Review*—Selections 1946-7. (4 pages.)

7. IPAA Memos March 24 and June 23, 1947, analyzing U. S. Bureau of Labor statistics and report by National Crude Oil Industry Advisory Committee appointed by OPA. (7 pages of tables, charts, etc.)

8. Charts II, III, and IV by PAW—Source of data: Bureau of Mines, Department of Commerce and Bureau of Labor Statistics Wholesale Price Indices. (13 pages of tables, charts, statistics and comment.)

9. Texas Employment Commission Statistics 1946–8 are available—showing petroleum and refining highest paid of all workers.

10. Original certified copies of monthly reports 1946–8 on file in office of Comptroller of Public Accounts are available. (Items IX and X, Sinclair says are "omitted to reduce bulk.")

We are asked to take judicial notice of all these matters in ruling upon the action of the court below in sustaining numerous exceptions to the State's petition. If we should accede then we would be required to judicially notice all other factors which might conceivably refute the conclusion which Sinclair seeks to draw from its analysis of business conditions relating to the oil industry during the relevant period.

Whether the Trial Judge undertook to judicially notice all these matters we are not informed.

The taking of judicial notice as to matters of fact is discretionary with the Court. The rule is well stated in 31 C.J.S., Evidence, § 13, page 522, as follows:

"The doctrine of judicial notice rests on the wisdom and discretion of the courts. The power to take judicial notice is to be exercised by courts with caution; care must be taken that the requisite notoriety exists; and every reasonable doubt upon the subject should be promptly resolved in the negative. Except when required to do so by a mandatory statute, courts are not bound to take judicial notice of matters of fact; whether they will do so or not depends on the nature of the subject, the issue involved, and the apparent justice of the case."

See also Wigmore on Evidence, supra, p. 3602.

In 17 Tex.Jur. p. 171, this statement is made:

"The scope of judicial knowledge will be extended so as to keep proper pace with the advance of art, science and general knowledge, when the facts are of such an age and duration as to have become a part of the common knowledge of well-informed persons. But while there is a growing disposition on the part of the courts to broaden the area of judicial knowledge, they should exercise this power with caution. Care must be taken that the requisite notoriety exists, and every reasonable doubt on the subject should be resolved in the negative."

The Court, in Montgomery Ward Co. v. Peaster, Tex.Civ.App., Eastland, 178 S.W. 2d 302, 307, held that "courts cannot take judicial notice of such facts as are known, if at all, only by a specially informed class of persons" and quoted from 31 C.J.S. the following test:

"'(1) Is the fact one of common, everyday knowledge in the jurisdiction, which every one of average intelligence and knowledge of things about him can be presumed to know? (2) Is it certain and indisputable?'" 31 C.J.S., Evidence, § 9.

These authorities as well as complete awareness of our own limitations persuade us to decline to take judicial notice of the contents of Sinclair's Appendix.

If the problem presented could be answered by judicially noticing that, generally speaking, wages and the cost of materials have advanced since the end of World War Two we could go along with Sinclair and notice such fact. What we are called upon to notice is, however, a far more specific fact i. e. that among other increases a ½ cent per gallon increase in the price of gasoline on the 27th day of March, 1947, by all appellees was solely the result of economic forces and not the result of their unlawful agreement.

Just what factors go to make up the cost of a gallon of gasoline and the proportion of cost contributed by each factor are not information which anyone can rightfully assume is possessed by persons of average intelligence and knowledge.

Of course the Trial Judge, in the first instance, must exercise his discretion in this matter subject to review for abuse. We suggest that the Trial Judge exercise his discretion as we have done especially if this case is tried before a jury. No jury could intelligently appraise the mass of technical evidence contained in Sinclair's Appendix unless it was explained and translated into understandable conclusions by a witness qualified to interpret such evidence. Thus the question would become a question of expert or opinion evidence rather than of judicial notice.

Appellees say this is a suit for injunction and that "The rule in suits for injunctions is that the petition must negative every reasonable hypothesis except the hypothesis that plaintiff is entitled to the recovery prayed for."

In connection with their point that the petition does not allege circumstances sufficient to meet the requirements of a suit for penalties appellees say some of the reasonable hypothesis, inconsistent with guilt and consistent only with innocence that may be drawn from the facts alleged and which the petition fails to negative are:

That the price changes which followed after July, 1946, were the natural result of:

(1) Removal of O.P.A. ceilings in July, 1946; (2) greatly increased cost of labor and materials; (3) the desire of the sellers of gasoline in Texas, each exercising his independent judgment, to obtain the market value for his products and not to sell them at a loss; (4) the free play of supply and demand; (5) the greatest increase in demand for gasoline ever experienced by the petroleum industry, and (6) were to be expected in a free market, with informed buyers, informed sellers and products containing similar properties.

The contents of the petition noted supra and especially the allegations that the price increases were the result of the agreement,

were artificial and not the result of economic conditions negative the above inferences and others that might conceivably be suggested.

As noted supra the petition alleged that the conspiracy and agreement had its inception prior to July, 1946, and that it was the outgrowth of long planned action by appellees. In support of these allegations the petition alleges appellees' participation in trade associations and the adoption in 1928, of the "Code of Practices for the Marketing and Refining of Petroleum Products."

■ It was proper to allege such participation and adoption of the code as showing knowledge, planning, motive and a general scheme on the part of appellees and to identify their activities and participation as is alleged. Such pleading would afford a basis for the introduction of evidence tending to show knowledge, intent, plan, motive and identity. McCormick & Ray, Texas Law of Evidence, §§ 695 & 696; Wigmore on Evidence (1905 ed.) Vol. 1, § 370; Jones on Evidence, 3rd ed., § 142. We are not here concerned with the admissibility of the evidence.

Appellee Sinclair, by its counterpoint nine, says that in any event we are required to affirm the trial court's judgment "because it becomes the duty of this Court on appeal to pass on those matters. deemed admitted in aid of the special exceptions."

The record shows that Sinclair filed its request for admissions and for discovery and production of documents under Rules 169 and 167, Texas Rules of Civil Procedure. Appellant filed exceptions to the request for admissions and subject to the exceptions, replied, by sworn answer, to the requests. No order of the trial court on the exceptions or requests is shown. However Sinclair brings forward a bill of exception which shows the trial court stated that he intended to sustain special exceptions to appellant's petition and that he "would overrule each of the motions and requests of defendant Sinclair."

■ In its brief Sinclair does not single out any matter that must be taken as admitted nor does it say that appellant's exceptions to its requests are not tenable. In view of this condition of the record there is no matter presented for review. In any event appellant has sufficiently answered many if not all of Sinclair's requests and our judgment would not be changed by a minute examination and statement of each request and the answer thereto.

We have considered appellees', and appellee Sinclair's, counterpoints and it is our opinion that what we have said is sufficient to dispose of each of them. As to appellee Sinclair's counterpoints 5, 6, 7 and 8, appellant's exception was to the judgment rendered by the trial court sustaining each of the special exceptions and dismissing the cause.

It is our opinion that the trial court erred in sustaining each of the special exceptions and for that reason the judgment is reversed and this cause is remanded.