**Hoover SMALL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 35157.**

Court of Criminal Appeals of Texas.

Jan. 23, 1963.

Rehearing Denied March 6, 1963.

Paul Maynard, Rex Emerson (on appeal only), Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally and Howell E. Stone, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Judge.

The offense is murder; the punishment, 25 years.

According to this record, deceased was last seen alive at a beer drinking establishment at approximately 1:30 A.M. Sunday morning. Later, at 7:30 A.M., appellant's eight-year old daughter, acting upon his in-

structions, attempted to arouse his wife from her bed in the front bedroom and, being unable to do so, was told by appellant to go for help. A small wound was visible in her upper cheek bone. The autopsy revealed that she had died at approximately 3:00 A.M. as the result of a .22 caliber bullet wound and her blood contained sufficient alcohol to indicate that she had been intoxicated.

Appellant was a total cripple, having lost both his legs, and could not descend the steps to his home, which was six or seven feet above the ground, without aid and could not have left the house in order to dispose of the murder weapon. A search of the house by the police within minutes after the outcry failed to reveal any weapon capable of inflicting the injury to deceased.

It is important to note that Dr. Jachimczyk, medical examiner for Harris County, who arrived upon the scene and later performed the autopsy, did not testify that death was instantaneous or even that it was impossible for deceased to have walked after she sustained the injury.

Appellant, testifying in his own behalf, denied that he had shot his wife and stated that she had put him to bed before she left for the evening and that he first knew of her condition when he sent the eight-year old girl to awaken her the next morning.

At most, the State was able to call witnesses who testified that deceased had bought a .22 caliber pistol prior to his wife's death and others who testified that he had on one occasion, when mad, said he was going to "get even" with deceased, "blow her brains out." Appellant denied both charges. Appellant and deceased were shown to have lived harmoniously together, and their eight-year old daughter was examined closely, and she denied any knowledge of a weapon. No one else was shown to have been in the house until the alarm was made.

█ In order to support a conviction upon circumstantial evidence, every other reasonable hypothesis except the guilt of accused must be excluded, and the evidence must go further than to raise a probability or suspicion.

The State did not exclude the following reasonable hypotheses:

1. That deceased was shot through a window by someone from outside.

2. That deceased was shot by someone else who entered the unlocked door of the house.

3. That deceased was not shot on the way home from the bar. In support of this hypothesis is the evidence that no one in the neighborhood was shown to have heard a shot.

In support of all of the above is the testimony of the State's witnesses that appellant expressed disbelief when informed that his wife was dead.

In Freels v. State, 151 Tex.Cr.R. 589, 210 S.W.2d 582, appellant, the injured party and their 14-year old daughter were at home alone in a rural area when the injured party was shot. Ill feeling was shown to exist between appellant and her husband, the injured party, and a rifle from which a bullet had been fired was found after the shooting. This Court said, "That Gerhard Freels, the husband of defendant, was shot with a .22 caliber gun at the time and place in question is definitely shown, but who fired the shot which inflicted the wound on his person is, in our opinion, not shown to the exclusion of every other reasonable hypothesis except the guilt of the defendant." The facts in Freels were far more compelling than in the case at bar, and yet this Court reversed the conviction because of their insufficiency.

█ A careful scrutiny of the following cases will reveal that the conviction in the case at bar should not stand: Pogue v. State, 12 Tex.App. 283; Milligan v. State, 97 Tex.Cr.R. 544, 263 S.W. 296; Owens v. State, 134 Tex.Cr.R. 384, 115 S.W.2d 920; Baugh v. State, 134 Tex.Cr.R.

215, 115 S.W.2d 411; Goode v. State, 139 Tex.Cr.R. 528, 141 S.W.2d 358; Kitchens v. State, 145 Tex.Cr.R. 272, 167 S.W.2d 762; O'Keefe v. State, 145 Tex.Cr.R. 349, 167 S.W.2d 1035; Thomas v. State, 150 Tex.Cr.R. 540, 203 S.W.2d 536; and Massey v. State, 154 Tex.Cr.R. 263, 226 S.W.2d 856.

The judgment is reversed and the cause remanded.

WOODLEY, Presiding Judge (dissenting).

I am unable to agree that the evidence is insufficient to sustain the jury's verdict.

As we stated in Ray v. State, 160 Tex. Cr.R. 12, 266 S.W.2d 124, "It is the province of the jury to determine fact situations. The preservation of our jury system demands that the jury shall always remain the arbiter of disputed fact issues.

"Whether an appellate court does or does not agree with the conclusion of the jury is of no importance. It is the province and duty of this court to determine if there be evidence which, if believed, would warrant the jury's verdict. If there is such evidence, then we have no authority to set aside the verdict."

While Art. 848 C.C.P. makes it the duty of this court to reverse for insufficiency of the evidence, it is the duty of the court to view the evidence in its strongest light from the state's standpoint. Mason v. State, 108 Tex.Cr.R. 452, 1 S.W.2d 283; Franklin v. State, 147 Tex.Cr.R. 636, 183 S.W.2d 573.

The jury is not bound to accept the defendant's testimony as true. This is so even where his testimony is not contradicted. See cases listed in Texas Digest under Criminal Law 554.

Not only was the jury authorized to reject appellant's statements and evidence as untrue—they had the right to consider his false denials of facts and circumstances which pointed to his guilt.

In addition to the facts stated in the original opinion, the state's evidence shows the following facts *which the apppellant denied:*

Some weeks prior to the homicide appellant made the statement that he was going to get even with his wife, and that he was going to blow her brains out.

On October 5, 1961, appellant, in a wheel chair and accompanied by his 10 year old son, purchased from George McKenzie at West Dallas Loan Office, a pawnshop, a small German made .22 caliber revolver, and signed a "Rental agreement" which was introduced in evidence.

About three weeks before the homicide, appellant's cousin Willie Fred Davis borrowed such a pistol from appellant's son, Hoover Jr., the boy getting it from behind the dresser in the front room of the home. The next day Davis returned the pistol to appellant.

Some two or three weeks prior to the homicide the appellant and the deceased were at the Gillette Inn. Appellant argued with another man and his son Hoover Jr. brought him a pistol such as he had purchased and loaned, and appellant put it under the seat of his wheel chair.

When his 10 year old son left, after dark, to spend the night with his cousin, his mother was not at home and his father, the appellant, was in bed in the front room. Appellant testified:

"Q. * * * Are you telling this jury that your wife put you from the front bed into the back bed on that night?

"A. I wasn't in the bed at all, when she put me in the bed. I was on the floor."

When his 8 year old daughter, at his request, went to wake up her mother and saw that she was bleeding she reported the fact to appellant and he told her "to

try to wipe it off" * * * "to get a rag and wipe it off." He testified:

"Q. Did you tell her to go get something and wipe the blood off?

"A. No, sir. I didn't tell her anything about getting anything to wipe the blood off."

She told appellant that her mother was not breathing. He testified:

"Q. Didn't the little girl go in there and come back and tell you she wasn't breathing?

"A. No, sir. She didn't tell me nothing about breathing. She just told me that she couldn't wake her up."

When "Aunt Minnie" arrived the deceased "was laying there just like she was asleep." She saw no furniture knocked over or anything out of place. Her husband was called and then the police. The photograph introduced in evidence shows the deceased "just like she was asleep", as the witness testified, but with a bullet hole in the left temple and a small amount of blood on the pillow at the left of her head.

Dr. Jachimczyk, medical examiner for Harris County, testified: "The internal examination revealed a bullet tract into the brain, itself. There was no exit to the wound.

"The tract entered the left side of the brain and traveled from left to right, but from front to back, at approximately 15 degrees; and from toe toward head, at approximately 45 degrees, severing the left cerebral hemisphere and lodging in the right parietal cortex of the brain, the top side of the brain on the right, where I did recover a misshapen, small caliber bullet."

The appellant is a double amputee, having lost both legs as a result of being shot by a brother of the deceased. While he required assistance in going up and down the stairs from his porch to the ground, and used a wheel chair, the evidence shows that he was able to get around and move from one room to the other and to the porch on his hands.

Hoover Jr. repudiated his statement to the investigating officers to the contrary and testified that when he returned home the next morning his father "didn't tell 'me nothing about no gun. * * * He never had none."

He testified however that he went into the back bedroom where his father was and talked to him, hence he had ample opportunity to remove the murder weapon from the house.

Another circumstance is that on the morning before she was killed the deceased was looking for a house to rent. The jury was also authorized to consider the circumstance that there is not the slightest evidence to indicate that anyone other than the appellant had a motive for killing the deceased, or any grudge or malice toward her.

While the setting aside of the conviction of a legless man appeals to sympathy, the evidence supports the jury's verdict.